UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION


BRADLEY WILLIAM MONICAL,

        Plaintiff,

    v.

JACKSON COUNTY SHERIFF'S
DEPARTMENT; Ex-Sheriff MIKE
WINTERS; Ex-Sheriff COREY FALLS; Capt.
DANNY PENDLAND; Lt. JOSHUA
ALDRICH; Sgt. RUSSELL BEANE; Sgt.
THOMAS LEE; Sgt. ANDREW DAVIS;
Deputies TROY HAMILTON, GARY
CLARK, TIMOTHY HIGGINS, CHRISTINA
WALKER, MARCY KENNEDY, JASON
REESE, JOHN DOE 2, and ERIN GILKISON;
Psychologist DENNIS MCNAMARA;
Medical/Dental Staff S. REILLEY, LPN, C.
HINKLE, LPN, CB. BEATTY, RN, and Dr.
CULLEN,

        Defendants.

Case No. 1:17-cv-00476-YY

OPINION AND ORDER


YOU, Magistrate Judge:

    *Pro se* plaintiff Bradley William Monical, an inmate currently incarcerated in the Oregon

Department of Corrections, brings this suit against the Jackson County Sheriff's Department and

other defendants for claims arising out of his incarceration in the Jackson County Jail ("JCJ")

between November 13, 2013, and September 28, 2015.

On September 7, 2017, this court dismissed plaintiff's original complaint because it

consisted of a "69-page narrative" that failed to comply with F.R.C.P. 8's "short and plain

statement" standard. Order to Dismiss 3, ECF #9. The court also found that any claims based on

events that occurred before March 24, 2015, were outside the two-year statute of limitations. *Id.*

at 4.

Plaintiff filed a Second Amended Complaint on July 11, 2018. ECF #76. Defendants

have filed motions to dismiss, contending this case must be dismissed pursuant to the *Heck*

doctrine and because the claims are barred by the statute of limitations. ECF ##77, 110, 116.

Plaintiff also has filed a motion to convert the motions to dismiss to motions for summary

judgment. ECF #107. For the reasons discussed below, defendants' motions are granted in part

and denied in part, and plaintiff's motion is denied.[1]

---

[1] All parties have consented to allow a magistrate judge to enter final orders and judgment in this
case in accordance with FRCP 73 and 28 U.S.C. § 636(c). The unidentified John Doe defendant
does not affect consent. *See Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017) ("[A]ll
plaintiffs and defendants *named* in the complaint are "parties" within the meaning of §
636(c)(1)[.]") (emphasis added); *Alfano v. Farley*, No. 3:12-CV-02319-PK, 2014 WL 1660667,
at *2 (D. Or. Apr. 25, 2014) (holding that an unidentified Doe defendant who "has not received
notice of the complaint is not yet a party to an action whose consent is required in order for a
magistrate judge to have jurisdiction"); *Whitenight v. Wetzel*, No. 2:16-CV-01864, 2019 WL
6828392, at *9 (W.D. Pa. Dec. 12, 2019) ("While unserved defendants generally must also
consent for a magistrate judge to exercise jurisdiction based on 'consent of the parties' under [29
U.S.C. § 636(c)(1)], . . . this Court is not aware of any decision holding that consent is necessary
from defendants who are both unserved and unidentified."); 59 Am. Jur. 2d Parties § 2 ("John
Doe defendants who are never identified or served are never made parties to the action.").

## I.    Summary of Claims

In the Second Amended Complaint, plaintiff alleges numerous constitutional violations that he claims occurred during his incarceration at JCJ between November 13, 2013, and September 28, 2015.  The court, as it must, accepts as true the factual allegations that plaintiff has made in the complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007).

### A.    Claim 1—"Access to the Courts"

In Claim 1, plaintiff contends that he was denied access to the courts in connection with several criminal convictions:

Plaintiff claims that the failure of defendants Pendland and Aldrich to respond to his kyte[2] requesting access to the law library caused him to lose his right to file for post-conviction and federal habeas relief in Coos County case no. 11CR0581.  Second Amended Compl. ("SAC") 10, ECF #76.

Plaintiff contends that, due to "7 months of torturous conditions of isolation" and the postponement of his trial, he involuntarily pleaded no contest in Jackson County case no. 113373FE on May 22, 2014.  *Id.*  Despite making "requests in the dozens," plaintiff claims he was denied access to the law library to appeal his Jackson County conviction.  *Id.*

Plaintiff alleges that two years after pleading no contest in Jackson County, proceedings in another case revealed that a handprint recovered from a crime scene did not belong to him.  *Id.* Plaintiff contends that he lost his right to appeal his Jackson County conviction "because he wasn't allowed access to the law library" and "defendants . . . would in no way provide [him]

---

[2] "A Kyte is an inmate communication form."  *Galligar v. Franke*, No. 2:12–cv–01891–PKm 2015 WL 10373492, at *2 (D. Or. Dec. 28, 2015).

with any in cell legal materials or legal paper and supplies such as a pen to file court papers with." *Id.*

Plaintiff contends that he was not allowed to speak to his attorney in connection with federal case no. "1133CR00365." *Id.* at 11. Specifically, he alleges that on one occasion "jail staff" monitored a conversation with his attorney through a "one[-]way mirror and intercom system," and phone calls with his attorney were only allowed "in the presence of one or more deputies while handcuffed to [a] bench in the common open area of the booking area." *Id.* Lastly, plaintiff asserts that he "abandoned the idea of going to trial" and accepted a plea offer in connection with his federal charges "simply in order to escape the conditions at the jail." *Id.*

### B.    Claim 2—"Conditions of Confinement"

In Claim 2, plaintiff elaborates on the conditions of his confinement:

Plaintiff contends that he was kept in solitary confinement almost the entire time he was incarcerated at JCJ as punishment for his previous escape from the jail. *Id.* at 12, 24. Plaintiff describes "isolation cell 3" as "34 sq ft o[r] less," and claims he was purposefully placed in that cell to deprive him of "all human contact except for the delivery of meals." *Id.* at 12-13, 24. He claims that he kyted defendant Pendland to be placed in a different cell, but his "kytes were never returned." *Id.* at 13. As discussed more thoroughly in his fourth claim, plaintiff also alleges numerous defendants denied him due process in connection with his continued placement in solitary confinement. *Id.*

Plaintiff claims that for the first nine months of his confinement he was "not allowed out of cell exercise." *Id.* He was later permitted indoor exercise for one hour per week, but he refused to participate because he was not allowed to wear shoes on the "cold concrete," which "bruised [his] feet and made them ache." *Id.* at 14. Defendant Pendland offered to allow

plaintiff to use the indoor exercise room in full shackles, but plaintiff declined. *Id.* Plaintiff also alleges he was subjected to humiliating and unnecessary strip searches when being transferred to and from the indoor exercise room. *Id.* Plaintiff contends that, except for the three weeks he spent in the jail's general population, he was deprived of all outdoor exercise during his 22 months of incarceration at JCJ. *Id.* Even then, he had to wear "shower thongs" in the outdoor recreation yard and was, thus, treated differently than other inmates who had escaped or tried to escape. *Id.*

Plaintiff claims the heating in his isolation cell was inadequate. *Id.* at 15. He alleges that "the air temperature at times was so cold that [he] could literally see [his] breath." *Id.* Plaintiff claims jail staff denied his requests for a third blanket "even though they gave them out to the other inmates in that part of the jail without a need for medical intervention to do so." *Id.* Even after medical staff authorized a third blanket, plaintiff claims that defendant Hamilton confiscated it during a cell search at the end of January 2014. *Id.* at 16. Plaintiff "was finally allowed the [third] blanket"; however, it was still so cold in the cell during the winter that plaintiff had to keep "his body under the blanket at all times" and would "not eat some days because it took too long to warm back up once out from under the blankets." *Id.*

Plaintiff claims he was subjected to constant "24/7 light and extreme noise," depriving him of "even a single night[']s sleep for 22 months." *Id.* at 12, 18. Although the lighting in his isolation cells was always on, it was nonetheless "inadequate for reading" and caused permanent damage to his eyesight. *Id.* at 17-18.

Plaintiff asserts that defendants denied him an adequate number of showers from November 2013 to April 2015. He contends that he was supposed to receive a shower "at least twice per week," but he was only allowed one shower per week, "sometimes not for 11 or 12

days at a time." *Id.* at 18. Plaintiff contends he asked for and was denied grievances regarding the issue. *Id.* He asserts that from November 2013 to December 2014, he was not allowed to have soap, toothpaste, or a toothbrush in his cell unless requested. *Id.* at 19. Plaintiff further alleges that from November 2013 to February 2015, defendants Kennedy and Walker refused to provide plaintiff cleaning supplies for his cell. *Id.*

Plaintiff also claims he was denied adequate medical care. Plaintiff partially shattered a tooth in February 2014, which he immediately reported to defendants Kennedy, Reilley, and Hinkle. *Id.* at 20. He received Ibuprofen and Tylenol for the pain and was informed that "he was first on the list" to the see the dentist. *Id.* at 20-21. Despite such assurances, however, "someone would remove plaintiff[']s name from the list" every week the dentist was in. *Id.* at 21. Plaintiff was eventually allowed to see the dentist, defendant Dr. Cullen, on August 6, 2014. *Id.* Dr. Cullen informed plaintiff that jail policy only permitted extraction of a tooth even if it could be repaired. *Id.* Plaintiff initially declined, but had the tooth removed the following week due to the constant tooth pain and stomach problems caused by the pain medication. *Id.* Plaintiff further claims that despite being placed on suicide-watch multiple times, defendant McNamara never prescribed antidepressants or scheduled any "follow up meetings" to treat plaintiff's depression. *Id.* at 22-23.

Plaintiff contends that from November 2013 to July 2015, he "was made to perform a complete strip search and full body cavity search whenever he exited and entered his cell." *Id.* at 23. He alleges that during strip searches he "was harassed about his genitalia [and] weight gain. *Id.* at 24. He also alleges that in April 2015, defendant Higgins made a "joke" about using a mop handle "to check up [plaintiff's] ass for escape devices." *Id.*

Finally, plaintiff alleges that he was "completely denied access to [personal] visitors" from November 2013 to July 2015. *Id.* at 25. He also contends that at some unspecified time "[d]efendants denied visits to multiple lawyers" by falsely stating that plaintiff was "acting up" or "violating the rules." *Id.*

## C. Claim 3—"First Amendment Violations"

In Claim 3, plaintiff asserts a First Amendment violation based, in part, on the denial of "all access to the telephone to make calls to [a] lawyer or any personal calls to family" while he was incarcerated at JCJ. *Id.* at 26. Specifically, he contends that at various times from November 2013 to March 2015, defendants Pendland and Aldrich did not respond to his kytes requesting end-of-life calls with his father and stepfather. *Id.* He further claims that he was handcuffed to a bench and monitored by jail staff when he received phone calls from his attorney. *Id.* at 27. Plaintiff was not able to answer any of his lawyer's questions or ask his lawyer any questions due to the lack of privacy. *Id.*

Plaintiff further asserts that he was denied access to church services, and complains that the jail chaplain "seemed reluctant" to perform communion and prayer at his solitary confinement cell door because he was of a different faith. *Id.* at 27-28. He alleges that defendants Pendland, Aldrich, Lee, Davis, and Beane never replied to his kytes requesting to attend church services, and that defendant Beane specifically told plaintiff he was "not going" to church. *Id.* at 27.

Plaintiff raises additional claims related to purported censorship and tampering with his mail. *Id.* at 28. Specifically, plaintiff alleges that in April 2015, defendants Aldrich and Beane told him that before he could mail letters containing his "written account of his experiences at the Jackson County Jail," he had to remove "portions of [his] story . . . . criticizing the jail." *Id.*

Plaintiff further alleges that between April 2014 and July 2015, several letters that he sent describing the conditions of his confinement and incidences of jail staff abusing inmates arrived at their intended destinations unsealed and either had missing pages or were completely empty. *Id.* at 28-29.  Plaintiff "was able to narrow down" that his letters were being lost when sent out on night shifts during which defendants Beane and Hamilton were working.  *Id.* at 29.

### D.     Claim 4—"Due Process"

Finally, in Claim 4, plaintiff contends he was denied due process in connection with his placement in solitary confinement.  *Id.* at 29-30.  Plaintiff alleges he was "given a weekly segregation review" by defendant Beane, which was "rubber stamped" by defendant Pendland, and he was never given notice or a chance to participate in the review process.  *Id.* at 30.  He further claims that on March 17, 2015, defendant Higgins wrote him up for a disciplinary violation in retaliation for reporting Higgins' aforementioned "joke" as a Prison Rape Elimination Act ("PREA") violation.  *Id.*  He claims that as a result of Higgins' write-up he was only supposed to be subject to "a three[-]day sanction," but was instead placed in "isolation cell # 1" for six months.  *Id.*  Plaintiff contends he "was never given a hearing" nor "allowed a grievance over the matter."  *Id.*

## II.     Standard of Review—Rule 12(b)(6)

To state a claim upon which relief may be granted, a plaintiff must allege facts that, when accepted as true, give rise to a plausible inference that the defendants violated the plaintiff's constitutional rights.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *Moss v. U.S. Secret Serv.*, 572 F.3d

962, 969 (9th Cir. 2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (internal quotations omitted).

In considering a Rule 12(b)(6) motion, the court generally limits review to the contents of the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended by* 275 F.3d 1187 (9th Cir. 2001). The court may, however, "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When a plaintiff is proceeding *pro se*, the court must construe the pleadings liberally and afford the plaintiff the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Moreover, before dismissing a *pro se* civil rights complaint for failure to state a claim, the court must supply the plaintiff with a statement of the complaint's deficiencies. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623-24 (9th Cir. 1988); *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987). A *pro se* litigant will be given leave to amend his or her complaint unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *Karim-Panahi*, 839 F.2d at 623; *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000).

## III.  Statute of Limitations

42 U.S.C. § 1983 does not contain a specific statute of limitations. Instead, "federal courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." *Butler v. Nat'l Cmty. Renaissance of California*, 766 F.3d 1191, 1198 (9th Cir. 2014) (citation and internal quotation marks omitted). In Oregon, the two-

year statute of limitations for personal injury actions, O.R.S. § 12.110(1), applies to claims

brought under § 1983. *Sain v. City of Bend*, 309 F.3d 1134, 1139 (9th Cir. 2002).

### A.    Applicability of O.R.S. § 12.020

Plaintiff filed his complaint on March 24, 2017, meaning his claims must have accrued

on or after March 24, 2015, for them to be timely. Pl.'s Compl., ECF #1. In his Second

Amended Complaint, plaintiff alleges facts that occurred between November 13, 2013, and

September 28, 2015. Defendants contend that although claims based on events that occurred

between March 24, 2015, and September 28, 2015, fall within the two-year statute of limitations,

they are barred under O.R.S. § 12.020.

O.R.S. § 12.020(1) provides that an action "shall be deemed commenced as to each

defendant, when the complaint is filed, and the summons served on the defendant[.]" If,

however, a defendant is served within 60 days of the filing of the complaint, the action "shall be

deemed to have commenced upon the date on which the complaint in the action was filed."

O.R.S. § 12.020(2). Here, defendants were served more than 60 days after the original complaint

was filed, and over two years after September 28, 2015. ECF ##44, 94-105, 115. Thus, argue

defendants, this case must be dismissed in its entirety.

In support of their argument, defendants rely on *Torre v. Brickey*, 278 F.3d 917 (9th Cir.

2002), a diversity case involving a state law claim of intentional battery. There, the plaintiffs

failed to serve the summons on the defendant within 60 days of filing the complaint. The district

court found, under O.R.S. § 12.020, that the cause of action did not commence until the

summons was served, and dismissed the action. *Id.* On appeal, the plaintiffs argued that the

Federal Rules of Civil Procedure, as opposed O.R.S. § 12.020, applied, and that under F.R.C.P. 3

and 4(m), their action commenced at the time the complaint was filed. *Id.* at 919. In rejecting

the plaintiffs' argument, the Ninth Circuit observed that, absent a direct conflict between a federal rule and state law, state law applied in diversity actions. *Id.* The court further held that "Rule 4(m) merely sets a *procedural* maximum time frame for serving a complaint," whereas O.R.S. § 12.020 "is a statement of a substantive decision by that State that actual service on, and accordingly actual notice to, the defendant is an integral part of the several policies served by the statutes of limitations." *Id.* (emphasis in original) (citation and internal quotation marks omitted).

However, this is not a diversity action. In *Mullens v. City of Lakewood*, a prisoner civil rights case, the defendants argued that R.C.W. § 4.16.170—an "analogous" Washington commencement law—barred the plaintiff's § 1983 claim. No. 3:15-cv-05442-BHS-KLS, 2016 WL 4571915, at *3-4 (W.D. Wash. Aug. 9, 2016), *report and recommendation adopted*, 2016 WL 4539654 (W.D. Wash. Aug. 31, 2016). Similar to O.R.S. § 12.020, R.C.W. § 4.16.170 requires that a defendant be served within 90 days of filing the complaint for "the commencement to be complete." *Id.* at *3. The court recognized that absent a direct conflict with federal rules, state law applies in diversity cases, and held that "*Torre*, therefore, should be seen as applicable only in the diversity context." *Id.* at *4. In a § 1983 case, "only the length of the limitations period, and closely related questions of tolling and application, are to be governed by state law." *Id.* at *4-5 (citations and internal quotation marks omitted).

The court's reasoning is *Mullens* is persuasive. Because this is not a diversity case, the federal rules, not O.R.S. § 12.020, govern the commencement of the action. *See id.* at *4; *see also S.J. v. Issaquah Sch. Dist. No. 411*, 470 F.3d 1288, 1293 (9th Cir. 2006) (holding "a federal court borrowing a state's time period for filing suit brought under federal law should not also borrow the state's time limits for serving the complaint"); *Sain*, 309 F.3d at 1138 (holding "a §

1983 action is commenced in federal district court for purposes of the statute of limitations when the complaint is filed"). Accordingly, plaintiff's claim commenced on the date it was filed, March 24, 2017. *See* F.R.C.P. 3.

**B.      Discovery Rule**

Plaintiff contends all of his claims are timely because, under the discovery rule, his claims did not accrue until December 8, 2016, when he gained access to the "Prisoner's Self-Help Litigation Manual" in state prison. Pl.'s Resp. 35, ECF #107. The federal "discovery rule" governs the accrual of a § 1983 action so that "a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (citing *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996)); *Bird v. Dep't of Human Servs.*, 935 F.3d 738, 743 (9th Cir. 2019). A person knows, or should know, of the injury that forms the basis for an action when he knows "both the existence and the cause of his injury," not upon becoming aware of the applicable law that gives rise to a claim. *United States v. Kubrick*, 444 U.S. 111, 113 (1979); *see also Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008).

Plaintiff does not allege that he was unaware of the existence or causes of his injuries. Indeed, plaintiff concedes that while incarcerated at JCJ, he "whole heartedly believed that his treatment by these defendants was illegal under federal and state law, but he did not know and had no way of knowing that this treatment was illegal until 12-16-2016 when he gained access to legal materials." Pl.'s Resp. 29, ECF #107. Plaintiff's "ignorance of his legal rights" is immaterial for purposes of calculating the date of accrual. *Kubrick*, 444 U.S. at 122.

## C.    Equitable Tolling

Plaintiff next contends that his claims should be equitably tolled because defendants made it impossible for him to bring these claims while he was in the custody of JCJ.[3]  Actions brought under § 1983 follow the forum state's tolling rules.  *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999).  "Equitable tolling is used sparingly in Oregon," and is available only when "circumstances outside the control of the affected party make it *impossible* to comply with a statute of limitations."  *Allen v. Nw. Permanente, P.C.*, 2013 WL 865967, at *6 (D. Or. Jan. 2, 2013) (emphasis added) (citations omitted), *report and recommendation adopted as modified*, 2013 WL 865973 (D. Or. Mar. 7, 2013), *aff'd sub nom. Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024 (9th Cir. 2016).[4]

Plaintiff alleges that defendants failed to provide him with a legal assistant and, with the exception of one occasion on April 30, 2015, denied him access to the law library.  SAC 10-11, ECF #76.  He further claims that JCJ had "no materials, no paper, no copying and no mail service for indigent inmates or otherwise."  *Id.* at 11.  Contrary to this assertion, however, plaintiff also alleges that between April 2014 and July 2015, defendants Beane and Hamilton tampered with several of his letters that he mailed from custody.  *Id.* at 28-29.  Thus, plaintiff

---

[3] The court's order dismissing plaintiff's original complaint states "any claims based on events which occurred prior to March 25, 2015, are barred by the statutes of limitations."  Order Dismiss 4, ECF #9.  Although plaintiff realleges claims in the Second Amended Complaint based on events that occurred outside of the limitations period, the court never addressed plaintiff's equitable tolling arguments.  *See Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012) (noting the "law of the case" doctrine is limited to instances where "[t]he issue in question [was] decided explicitly or by necessary implication in the previous disposition.").

[4] Under Oregon law, incarceration in and of itself is no longer a basis upon which to toll the statute of limitations.  *Moore v. Oregon Inst. of Tech.*, No. CV 06–770–PK, 2007 WL 682508, at *3 n.3 (D. Or. Mar. 1, 2007) (noting that O.R.S. § 12.160(3) was amended in 1997 to remove the tolling provision for claims that accrued during a claimant's incarceration).

had access to writing materials and mail service with which he could have filed a complaint. Notably, a complaint need only contain "a short and plain statement of the claim" and "[n]o technical form is required." F.R.C.P. 8(a), (d); *see also Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("Complaints need not plead law or match facts to every element of a legal theory").

Plaintiff also was permitted to make a phone call to lodge a PREA complaint against defendant Higgins, SAC 24, 26, ECF #76, and he was given access to the law library in April 2015. *Id.* at 10. Moreover, plaintiff's criminal defense attorney offered plaintiff some assistance in addressing the conditions of plaintiff's confinement at JCJ. Pl.'s Resp. 30, ECF #107. Accordingly, the court cannot conclude that circumstances outside of plaintiff's control made it *impossible* for him to comply with the statute of limitations; plaintiff has not demonstrated that he is entitled to the extraordinary relief of equitably tolling his claims.

### D.  Accrual of Plaintiff's Claims

Federal courts applying a state statute of limitations to civil rights claims brought under § 1983 "borrow no more than necessary" from state law. *West v. Conrail*, 481 U.S. 35, 39 (1987). "Consistent with this maxim, federal, not state, law determines when a civil rights claim accrues." *TwoRivers*, 174 F.3d at 991 (citing *Elliott v. City of Union City*, 25 F.3d 800, 801-802 (9th Cir. 1994)). "'Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Klein v. City of Beverly Hills*, 865 F.3d 1276, 1278 (9th Cir. 2017) (quoting *Maldonado v. Harris*, 370 F.3d 945, 955 (9th Cir. 2004)).

"When an affirmative defense is obvious on the face of a complaint, . . . a defendant can raise that defense in a motion to dismiss." *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred

by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (citation and internal quotations omitted). "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995) (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980)). "[A] complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Id.* at 1207.

### 1.    Access to Courts and Counsel Claims

An inmate has a constitutionally protected right of meaningful access to the courts under the Fourteenth Amendment. *Bounds v. Smith*, 430 U.S. 817, 820-21 (1977). However, that right is not "an abstract, freestanding right to a law library or legal assistance. . . ." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* Thus, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id.* Instead, "[t]he tools . . . require[d] to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement."

The right of access to courts also encompasses the right to talk in person and on the telephone with counsel in confidential settings. *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990). Furthermore, "concerns as to privacy in attorney-client communications implicates the

Sixth Amendment right to[] assistance of counsel[.]" *Carr v. Tousley*, No. CV-06-0125SJLQ, 2009 WL 1514661, at *33 (D. Idaho May 27, 2009).

"A denial of access to the courts claim accrues when the plaintiff knows or has reason to know that (1) he has been denied a reasonably adequate opportunity to present his claims, and (2) he suffered actual injury to contemplated or existing litigation." *Traxtle v. Holman*, No. 11–cv-6142–TC, 2011 WL 6960747, at *2 (D. Or. Aug. 11, 2011), *report and recommendation adopted*, 2012 WL 32453 (D. Or. Jan. 4, 2012), *aff'd*, 502 F. App'x 709 (9th Cir. 2013). An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Lewis*, 518 U.S. at 348.

"[I]n the context of the [Sixth Amendment] right to counsel," a pretrial detainee need not show "actual injury" because "unreasonable interference with the accused person's ability to consult counsel is itself an impairment of the right." *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001). However, "even when an institutional restriction infringes a specific constitutional guarantee, such as the [Sixth] Amendment, the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

Plaintiff alleges that his direct appeal of Coos County case no. 11CR0581 was denied on September 13, 2013, but that he did not learn of the denial until October 2014. SAC 10, ECF #76. He contends that, thereafter, his requests to access the law library to file for post-conviction and federal habeas relief were declined. *Id.* In Oregon, a petition for post-conviction relief "must be filed within two years of . . . the date the appeal is final in the Oregon appellate courts." O.R.S. § 138.510(3). Assuming plaintiff's appeal became final when it was denied on September 13, 2013, plaintiff had until September 13, 2015, to timely file for post-conviction

relief. While plaintiff had reason to know that he had been denied a reasonable opportunity to bring his claims at the time his requests for law library access were denied, he did not suffer an "actual injury" until the time for him to bring his claims for post-conviction relief expired. Thus, plaintiff's claim that he was denied access to the courts to file for post-conviction relief from his Coos County conviction accrued on September 13, 2015, which is within the two-year statutory period. Defendants' motion to dismiss is therefore denied as to this claim.

However, plaintiff's claim that he was denied access to the courts to file a federal habeas petition is time-barred. "A federal habeas claim must be brought within the one-year statute of limitations set forth in the Antiterrorism and Effective Death Penalty Act[.]" *Payne v. Adams*, No. 2:10–cv–02677 LKK KJN P, 2012 WL 260035, at *1 (E.D. Cal. Jan. 27, 2012) (citing 28 U.S.C. § 2244). As such, plaintiff had until September 13, 2014, to timely file for federal habeas relief. Plaintiff suffered an actual injury, and his claim accrued, on that date, which is outside of the statutory period. Accordingly, plaintiff's claim that he was denied access to the courts to file a habeas petition in connection with his Coos County conviction is dismissed with prejudice. *See Supermail Cargo,* 68 F.3d at 1206-07 (dismissal of a claim is proper if "the plaintiff can prove no set of facts that would establish the timeliness of the claim.") (citation omitted).

Plaintiff asserts that two years after he pleaded no contest to the Jackson County charges, "[p]roceedings in another case . . . revealed that another crime had occurred that had plaintiff's DNA at the scene," but a handprint recovered from the crime scene that was allegedly left by the suspect did not belong to plaintiff. Plaintiff pleaded no contest in Jackson County case no. 113373FE on May 22, 2014. SAC 10, ECF #76. Plaintiff claims that he "lost all rights to present this on his behalf . . . because he wasn't allowed access to [the] law library in order to file an appeal when [his] lawyer did not do so." *Id.* In Oregon, "a notice of appeal must be

served and filed not later than 30 days after the judgment or order appealed from was entered in the register." O.R.S. § 138.071(1). However, a defendant may file, with leave of the court, a notice of direct appeal up to 90 days after the judgment was entered if he can demonstrate that the failure to file a timely appeal was "not attributable to the defendant personally," and show a "colorable claim of error in the proceeding" being appealed. O.R.S. § 138.071(5). Even accepting what plaintiff says is true, this 90-day deadline expired in August 2014. Because plaintiff's claim accrued outside of the statutory period, this claim must be dismissed with prejudice.

Plaintiff's claim regarding his Jackson County federal habeas petition, however, is not foreclosed. Plaintiff claims that despite making "dozens" of requests, he was denied law library access to file a federal habeas challenge of his Jackson County conviction. *Id.* The one-year statute of limitations expired on May 23, 2015. Thus, plaintiff's claim related to this federal habeas challenge accrued within the two-year statute of limitations.

Finally, plaintiff claims that he was denied private conversations with counsel in connection with his federal conviction. Plaintiff's Sixth Amendment claim regarding any unwarranted interference with his right to speak privately with counsel that occurred after March 24, 2015, is timely; however, as discussed *infra*, Section II, plaintiff's claim is barred by the *Heck* doctrine.

### 2. Conditions of Confinement Claims

Plaintiff asserts that the conditions of his confinement at JCJ violated his rights under "the 8th amendment of the cruel and unusual clause and the 4th and 14th amendments of the

equal protection and due process."[5]  SAC 12, ECF #76.  Plaintiff claims that defendants placed

him in isolation cells for nearly the entire 22 months he was incarcerated at JCJ, denied him

outdoor exercise, subjected him to humiliating and unnecessary strip searches, failed to provide

adequate heat in his cell, subjected him to "24/7 light and extreme noise," failed to provide

adequate lighting for reading, failed to permit plaintiff two showers per week, and denied

plaintiff's requests for basic hygiene items and cleaning supplies.  *Id.* at 12-26.

Although the bulk of plaintiff's allegations concerning his conditions of confinement

occurred outside of the limitations period, plaintiff argues his claims are timely under the

continuing violations doctrine.  The continuing violation doctrine applies to § 1983 actions and

allows a plaintiff to seek relief for events outside of the limitations period.  *See Knox v. Davis*,

260 F.3d 1009, 1013 (9th Cir. 2001).  The doctrine holds that where a violation is ongoing in

nature, the statute of limitations does not begin to run until the wrongful conduct ends.  *Flowers

v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002).  A continuing violation can be established

either through "a series of related acts, one or more of which falls within the limitations period,"

or by "a systemic policy or practice of discrimination" that exists both before and during the

limitations period.  *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997) (citation

---

[5] The Eighth Amendment cruel and unusual clause applies to prisoners who have been convicted of crimes and the Fourteenth Amendment due process clause applies to pretrial detainees.  "Due process requires that a pretrial detainee not be punished.  A sentenced inmate, on the other hand, may be punished, although that punishment may not be 'cruel and unusual' under the Eighth Amendment." *Bell*, 441 U.S. at 537 n.16.  Here, the complaint alleges that plaintiff "was convicted on case # 11CR0581 out of Coos County Oregon, 7/11/2011," and "awaiting trial at the Jackson county jail for case number 113373FE."  SAC 10, ECF #76.  Thus, it appears that plaintiff was both serving a sentence and awaiting trial.  In this situation, it is unclear whether the Eighth or the Fourteenth Amendment applies or both.  However, because this issue has not been raised in the motions, the court leaves it for another day.

omitted).  However, "mere 'continuing impact from past violations is not actionable.'"  *Knox*, 260 F.3d at 1013 (emphasis and citation omitted).

The crux of plaintiff's claim is that because he caused embarrassment to JCJ by escaping and remaining a fugitive for nearly one year, jail staff implemented a policy and practice of cruel and unusual punishment by denying him adequate conditions of confinement.  SAC 29, ECF #76.  Plaintiff, however, acknowledges that he was placed into the jail's general population on February 20, 2015.  *Id.* at 12.  As such, defendants' purportedly discriminatory policy was not continuous.  Moreover, when plaintiff was placed back in administrative segregation on March 17, 2015, it was a discrete act based on the fact that plaintiff had committed "a minor rule violation."  *Id.* at 30.

Plaintiff claims that defendant Higgins placed him back in administrative segregation in retaliation for reporting Higgins' mop handle "joke" as a PREA violation.  *Id.*  Although Higgins' alleged conduct could support plaintiff's theory that his second placement in solitary confinement was simply a continuation of defendants' discriminatory policy, plaintiff's claim is factually impossible as alleged.  Pl.'s Resp. 62-63, ECF #107.  Plaintiff contends that Higgins made the "joke," which plaintiff perceived as a threat, in April 2015.  SAC 24, ECF #76.  He further alleges that it took "over two weeks from the incident" before he was allowed access to a telephone to make a PREA complaint.  *Id.* at 26.  Plaintiff, however, alleges that Higgins placed him in "isolation cell #1" on March 17, 2015.  *Id.* at 30.  Higgins could not have possibly retaliated against plaintiff in March for reporting a threat that Higgins made the following month.  Accordingly, plaintiff has not alleged facts sufficient to warrant application of the continuing violations doctrine.

Further, some of plaintiff's allegations concerning the conditions of his confinement are wholly outside the limitations period. Plaintiff claims that during his first period of solitary confinement, he was placed in "isolation cell #3," whereas he spent his second period of solitary confinement in "isolation cell #1." *Id.* at 18. Many of the conditions of confinement plaintiff complains of, however, are specific only to isolation cell no. three. For example, plaintiff asserts that the "torture of cold temperature" in isolation cell no. three ended in February 2015, presumably because he was placed back into JCJ's general population. *Id.* at 16. Notably, he does not allege that the heating was inadequate in isolation cell no. one. Further, unlike isolation cell no. three, plaintiff does not allege that isolation cell no. one was too small. And, plaintiff alleges he was denied cleaning supplies and basic hygiene supplies only during the time he was housed in cell no. three. *Id.* at 19. Accordingly, plaintiff's conditions of confinement claims arising from his stay in isolation no. three are dismissed as untimely.

Nonetheless, some of the purportedly unconstitutional conditions of confinement asserted by plaintiff occurred within the limitations period. Specifically, plaintiff alleges he was denied all outdoor exercise, two showers a week, and adequate lighting during the relevant period. *Id.* at 12, 17-18. Moreover, he alleges that he was subjected to "24/7 light and extreme noise," as well as unnecessary and humiliating strip searches during that time. *Id.* at 12, 23-24. *See Keenan v. Hall*, 83 F.3d 1083, 1089-92 (9th Cir. 1996) (collecting cases demonstrating that conditions of confinement claims alleging deprivation of outdoor exercise, excessive noise and lighting, and inadequate lighting can state a claim under the Eighth Amendment); *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988) (noting strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" are unreasonable under the Fourth

Amendment).  As such, defendants' motion to dismiss based on untimeliness is denied as to those claims that occurred during the relevant period.

### 3. Deliberate Indifference Claims

Plaintiff alleges defendants McNamara, Reilley, Hinkle, Beatty, and Cullen (hereinafter "medical defendants") denied him adequate medical care on several occasions.  Denial of medical attention to a convicted inmate constitutes an Eighth Amendment violation if the denial amounts to deliberate indifference to serious medical needs.  *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc).  Additionally, the Fourteenth Amendment protects pretrial detainees under an objective deliberate indifference standard.  *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124 (9th Cir. 2018).  Plaintiff's claims accrued when he knew or had reason to know of defendants' deliberate indifference to his medical needs.  *TwoRivers*, 174 F.3d at 991-92.

Plaintiff alleges that he partially shattered a tooth in February 2014 when he "bit into an uncooked bean or rock during the lunch meal."  SAC 20, ECF #76.  He immediately reported the incident to defendants Kennedy, Reilley, and Hinkle, and was prescribed Tylenol or Ibuprofen for the pain.  *Id.*  Despite repeated assurances that plaintiff was "first on the list" to see the dentist, he was not permitted to see defendant Dr. Cullen until August 6, 2014.  *Id.* at 21.  Dr. Cullen informed plaintiff that jail policy "was only for removal of teeth," even if the tooth could be repaired.  *Id.*  Plaintiff initially declined.  *Id.*  The following week, however, plaintiff elected to undergo the tooth extraction.  *Id.*  Thus, even assuming that plaintiff has asserted a valid claim of deliberate indifference, his claim accrued at the latest in August 2014, and is barred by the two-year statute of limitations.

Plaintiff further claims medical defendants were deliberately indifferent to his mental health needs on numerous occasions. *Id.* at 22-23. Plaintiff first alleges defendant McNamara failed to provide him with a mental health evaluation while he was placed on suicide watch in November 2013. *Id.* at 22. Plaintiff further asserts that McNamara failed to prescribe him antidepressants even though plaintiff informed him that he was suicidal. *Id.* at 22-23. According to plaintiff's allegations, he became aware of McNamara's deliberate indifference no later than October 1, 2014, when McNamara conducted a "mental stability" check on plaintiff and neglected to "demand a treatment for depression." *Id.* at 23. Thus, plaintiff's claims based on medical defendants' failure to provide adequate mental health treatment are also outside of the statute of limitations and must be dismissed with prejudice.[6]

### 4. First Amendment Claims

Plaintiff alleges that numerous defendants denied him access to family visitors from November 2013 to July 2015. *Id.* at 25. "[F]reedom of association is among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003) (citations omitted). That is not to say, however, that an inmate's right "to intimate association is altogether terminated by incarceration." *Id.* Rather, prison officials may restrict an inmate's right to association when doing so "bears a rational relationship to a legitimate penological interest." *Id.* at 135.

Plaintiff's allegations based on defendants' denial of visitation from March and July 2015 accrued within the limitations period. However, as discussed *infra*, Section III, plaintiff's claims are barred by the doctrine of issue preclusion.

---

[6] Because plaintiff's deliberate indifference claims are dismissed as untimely, the court finds it unnecessary to address defendants' argument that those claims are also barred by the issue preclusion doctrine.

Plaintiff also claims that he was denied telephone access. The Ninth Circuit has "stated in dicta that 'prisoners have a First Amendment right to telephone access, subject to reasonable security limitations.'" *Valdez v. Rosenbaum*, 302 F.3d 1039, 1047 (9th Cir. 2002) (quoting *Halvorsen v. Baird*, 146 F.3d, 680, 689 (9th Cir. 1998)). The right at issue has been described as an inmate's "right to communicate with persons outside prison walls," and "a telephone provides a means of exercising this right." *Id.* at 1048. Plaintiff alleges that from November 2013 to March 2015, his repeated requests to use the telephone were denied by "every" shift sergeant, namely Sergeants Aldrich and Pendland. SAC 26-27, ECF #76. Thus, plaintiff's claim that he was denied telephone access accrued outside the limitations period and is dismissed as untimely.[7]

To the extent plaintiff alleges a First Amendment retaliation claim against Higgins for placing plaintiff into solitary confinement as retribution for reporting Higgins' mop handle "joke" as a PREA violation, as discussed *supra*, Section I.E.2, the timing of plaintiff's allegations is factually impossible. Accordingly, plaintiff's retaliation claim against Higgins is dismissed.

Plaintiff further claims that numerous defendants denied him access to Christian religious services. *Id.* at 27-28. As is the case with an inmate's right to freedom of association, an inmate's First Amendment right to the free exercise of religion can be infringed upon only when

---

[7] The court notes that the limitations period began March 24, 2015. Plaintiff generally alleges that his requests for telephone access were denied through March 2015. Thus, it is possible that plaintiff was denied telephone access in the last week of March 2015, which is within the statute of limitations. Even assuming that denying an inmate telephone use for one week amounts to a cognizable constitutional deprivation, plaintiff cannot state a claim that entitles him to relief. Notably, plaintiff concedes that he was able to communicate with people outside JCJ using the mail. SAC 28-29, ECF #76; *see also Valdez*, 302 F.3d at 1049 (holding prison's blanket denial of telephone use did not violate First Amendment, in part, because inmate had an "alternative means of exercising his right to communicate with persons outside the prison walls" through the mail).

the prison restrictions are "reasonably related to legitimate penological interests." *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008). Because plaintiff contends he was denied access to church services the entire time he was incarcerated at JCJ, his claim based on denials that took place after March 24, 2015, are timely and will not be dismissed.

Finally, plaintiff alleges that his mail was tampered with on several occasions between April 2014 and July 2015. SAC 28-29, ECF #76. "[A] prison inmate, enjoys a First Amendment right to send and receive mail. However, a prison may adopt regulations which impinge on an inmate's constitutional rights if those regulations are reasonably related to legitimate penological interests." *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (internal citations and quotation marks omitted). Plaintiff further claims that in April 2015 defendants Beane and Aldrich told him that he had to remove "sections criticizing the jail" from his writings before he would be allowed to mail them. SAC 28, ECF #76. To the extent plaintiff claims his mail was tampered with in retaliation for his involvement in helping change JCJ's policies to grant inmates more mail access, "[r]etaliation against prisoners for their exercise of th[eir First Amendment] right[s] is itself a constitutional violation, and prohibited as a matter of clearly established law." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted). To the extent plaintiff alleges First Amendment claims of retaliation and interference with his use of mail that occurred after March 24, 2015, his claim accrued within the limitations period and is therefore timely.

### 5.     Due Process Claims

In his final cause of action, plaintiff claims he was denied due process in connection with his placement in solitary confinement. "Prisoners are entitled to certain due process protections when subject to disciplinary sanction." *Brown v. Oregon Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)). However, "these

procedural protections adhere only where the deprivation implicates a protected liberty interest— that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "Typically, administrative segregation in and of itself does not implicate a protected liberty interest." *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).

To the extent plaintiff makes a due process claim related to his placement in solitary confinement from November 2013 to February 2015, that claim accrued outside of the limitations period and is dismissed as untimely. As discussed, the continuing violations doctrine is inapplicable because plaintiff's second assignment to solitary confinement was a discrete act based on plaintiff's "minor rule violation." SAC 30, ECF #76. Plaintiff even refers to his placement in isolation cell no. one as a "second incident." *Id.* Accordingly, this claim is dismissed with prejudice.

Nonetheless, plaintiff was assigned to solitary confinement for a second time on March 17, 2015, which is just outside the limitations period. In confining an inmate to a period of administrative segregation, however, "prison officials provide adequate due process by holding an informal, non-adversarial evidentiary hearing within a reasonable time after administrative segregation begins, with periodic reviews thereafter to verify that continuing reasons support the segregation decision." *Cepero v. High Desert State Prison*, No. 3:12–cv–00263–MMD–VPC, 2015 WL 1308690, at *14 (D. Nev. Mar. 24, 2015) (citing *Hewitt v. Helms*, 459 U.S. 460, 477 & n.9 (1983)). Because confinement to administrative segregation may require periodic reviews, and because plaintiff alleges he was not provided any review in connection with his second placement in solitary confinement, plaintiff's claim accrued within the limitations period and will not be dismissed.

**IV.**     *Heck v. Humphrey*

Defendants contend that plaintiff's conditions of confinement and access to courts claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Mot. 6-7, ECF #77. In *Heck*, the Supreme Court held that a "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487. Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). *Heck* applies "even where the plaintiff's prior convictions were the result of guilty or no contest pleas." *Radwan v. Cty. of Orange*, 519 F. App'x 490, 490-91 (9th Cir. 2013) (citations omitted). To prevail, a plaintiff "must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 486-87.

However, access to courts claims are not necessarily barred by *Heck*. A prisoner's right to access the court encompasses "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement." *Lewis*, 518 U.S. at 356. "To make out a claim of denial of access to courts, a plaintiff must show: (1) the loss of a nonfrivolous underlying claim (otherwise known as 'actual injury'); (2) official conduct frustrating the litigation of that claim; and (3) a remedy that may be awarded as recompense but

that is not otherwise available in a future suit." *Sprinkle v. Robinson*, No. 202CV1563JAMEFBP, 2017 WL 1079833, at *7 (E.D. Cal. Mar. 22, 2017), *report and recommendation adopted*, 2017 WL 2812973 (E.D. Cal. June 29, 2017) (citing *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002)).

"Because the plaintiff need only show that the underlying case was nonfrivolous, proof of actual injury does not necessarily imply that plaintiff would have won the underlying case." *Id.* (citing *Lueck v. Wathen*, 262 F. Supp. 2d 690, 699 (N.D. Tex. 2003) (noting that, "[u]nlike the civil rights claims at issue in *Heck*, plaintiff's access claim does not necessarily imply the invalidity of his conviction or sentence") (internal citation and quotation marks omitted)). "[A] plaintiff alleging that his collateral attack was unconstitutionally blocked can establish each element without necessarily implying the invalidity of his incarceration." *Id.* Thus, where a "plaintiff seeks injunctive relief or monetary damages for being deprived of the opportunity to present non-frivolous claims on collateral review in an attempt to have his conviction set aside[,] *Heck* does not bar plaintiff's ability to bring a civil rights action." *Lueck*, 262 F. Supp. 2d at 699; *see also Penton v. Johnson*, No. 211CV0518TLNKJNP, 2019 WL 6618051, at *4 (E.D. Cal. Dec. 5, 2019 (holding that *Heck* does not bar a claim where the plaintiff "is not challenging his conviction, and his claim for damages will not necessarily imply the invalidity of his underlying conviction or sentence[,] because any judgment in [such an] action would establish only that his habeas action was not legally frivolous").

In sum, *Heck* bars claims of damages for facts related to incarceration or procedural defects where an award of such damages would imply that the conviction or sentence was invalid. *Canales-Robles v. Peters*, 270 F. Supp. 3d 1230, 1239 (D. Or. 2017). However, where a plaintiff "does not seek damages for wrongful incarceration, but rather seeks a declaratory

judgment, compensatory, emotional, punitive, and nominal damages, costs and fees, and any other relief the court deems just and proper . . . for the alleged violation of plaintiff's access to the courts," such a claim is not barred by *Heck*. *Penton*, 2019 WL 6618051, at *4; *see also Canales-Robles*, 270 F. Supp. 3d at 1240 (finding that plaintiff asserted "a cognizable injury based on Defendants' alleged policies and practices that prevented him from filing a post-conviction petition while in Oregon Youth Authority custody); *Lopez-Cervantes v. Peters*, No. 6:16–cv–1528–AC, 2017 WL 3897206, at 5* (D. Or. June 5, 2017), *report and recommendation adopted*, 2017 WL 3908677 (D. Or. Sept. 5, 2017) (holding that plaintiff could not seek damages for the fact of his incarceration, but *Heck* did not bar nominal, compensatory, and punitive damages for access to courts claim).

Here, plaintiff contends that the conditions of confinement he endured at JCJ directly affected the outcome in two cases: Jackson County case no. "113373FE" and federal case no. "1133CR00365." SAC 10-11, ECF #76. Plaintiff asserts that he pleaded guilty and no contest in those cases due to the "tortuous" and "unbearable" conditions of confinement. *Id*. at 10-25. Plaintiff also asserts that "[d]efendants denied visits to multiple lawyers" and monitored "every single call" plaintiff had with his lawyer. *Id.* at 25. He contends that the "denials of visits with [his] lawyer added to the other conditions of confinement[,] . . . forcing plaintiff in ultimately abandoning his rights to trial." *Id.* More specifically, plaintiff contends that "he was not allowed to speak with his lawyer in private" while he was held in the JCJ on his federal case. *Id.* at 11. He claims that, "[o]n one occasion plaintiff and attorney were placed in an interrogation room which had one way mirror and intercom system" and "jail staff stood in adjacent room during the entire meeting with lawyer." *Id.* Additionally, plaintiff contends that he was only allowed to

speak with his federal lawyer on the telephone while he was handcuffed in the presence of one or more deputies in the "common open area of the booking area." *Id.*

Plaintiff pleaded no contest to his Jackson County conviction on May 22, 2014. *Id.* at 10. As discussed, any claims based on conditions of confinement prior to March 24, 2015, are barred by the statute of limitations. Thus, it is unnecessary to decide whether any conditions of confinement claim related to plaintiff's Jackson County conviction is otherwise barred by *Heck*.

Plaintiff pleaded guilty to his federal convictions on June 29, 2015. *U.S. v. Monical*, Entry of Plea Hearing, June 29, 2015, No. 1:13-cr-00365-MC, ECF #49. Plaintiff has already petitioned for habeas relief from his federal conviction, which was denied. Op. and Order ("Habeas Op."), No. 1:13-cr-00365-MC, ECF #122. In his habeas proceeding, plaintiff argued that his guilty plea was coerced by his conditions of confinement and inability to speak in private with his attorney. Def.'s Am. Mot. to Vacate 1-2, No. 1:13-cr-00365-MC, ECF #89. As is the case here, plaintiff claimed that he pleaded guilty to escape the "tortuous conditions of confinement at the Jackson County Jail." *Id.* at 6. He even attached the First Amended Complaint he filed in this case in support of his petition for habeas relief. *Id.* at Ex. 4. Because plaintiff has directly tied the voluntariness of his guilty plea to his conditions of confinement, a judgment in favor of plaintiff on his otherwise timely conditions of confinement claims "would necessarily imply the invalidity of his conviction or sentence." *Heck*, 512 U.S. at 487. Under the same reasoning, plaintiff's claim that defendants infringed on his Sixth Amendment right to speak in private with his attorney also violates the *Heck* doctrine. *Valdez*, 302 F.3d at 1049 (9th Cir. 2002) (prisoner's Sixth Amendment claim of denial of access to counsel while a pretrial detainee barred by *Heck* because claim would necessarily imply invalidity of subsequent conviction).

However, to the extent plaintiff alleges unconstitutional conditions of confinement that existed after he pleaded guilty on June 29, 2015, they could not have influenced the voluntariness of his plea and therefore are not subject to *Heck*'s preclusive affect.  Moreover, plaintiff could conceivably allege a claim that "does not seek damages for wrongful incarceration, but rather seeks [damages] . . . for the alleged violation of plaintiff's access to the courts."  *Penton*, 2019 WL 6618051, at *4.  Such a claim, as long as it is pleaded properly and not barred by the statute of limitations, would not be barred by *Heck*.  Thus, defendants' motion to dismiss is granted, but plaintiff has leave to file an amended complaint alleging viable claims that are not barred by the statute of limitations or *Heck*.

## V.    Issue Preclusion

"Federal law governs the collateral estoppel effect of a case decided by a federal court." *Trevino v. Gates*, 99 F.3d 911, 923 (9th Cir. 1996) (citing *Fireman's Fund Ins. Co. v. International Market Place*, 773 F.2d 1068, 1069 (9th Cir. 1985)).  In order for issue preclusion to apply, "(1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by the party against whom preclusion is asserted[;] and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action."  *Id.* (citation omitted).

In denying plaintiff's petition for habeas relief, the district court noted that plaintiff's argument, "in essence," was "that he was subject to cruel and unusual punishment while incarcerated at the Jackson County Jail in order to coerce him into pleading guilty."  Habeas Op. 7.  In support of this argument, plaintiff asserted that he was "continuously confined" to an isolated cell.  *Id.* at 8.

The issue preclusion doctrine applies to plaintiff's denial of visitation rights claim. First, the visitation rights issue asserted by plaintiff here is identical to that raised in the habeas petition. In his habeas petition, plaintiff asserted he was "not allowed to have contact with anyone" while incarcerated at JCJ. *Id.* at 8. Here, plaintiff alleges that "[a]t no time in the first 18 months [he was incarcerated at JCJ] was he allowed visits with direct family members in any way[.]" SAC 25, ECF #76. Second, plaintiff actually litigated the visitation rights issue in his habeas proceeding. Indeed, plaintiff "submitted his inmate visitation log," which showed "numerous professional and personal visits . . . throughout the period of his incarceration at [JCJ]." Habeas Op. 8. Finally, the district court's determination of the visitation issue was critical and necessary to deciding the voluntariness of plaintiff's guilty plea. *Id.* Thus, plaintiff is foreclosed from relitigating that he was denied visitation rights.[8]

## VI.    Leave to Amend

Because it appears that plaintiff can allege viable claims that are not outside the statute of limitations or barred for other reasons, he is granted leave to file an amended complaint. Plaintiff is advised that Local Rule 15-1 requires that an amended complaint be complete in itself without reference to any prior pleading. Otherwise stated, the court cannot refer to a prior pleading to make plaintiff's amended complaint complete. This is because, as a general rule, an "amended complaint supersedes the original, the latter being treated thereafter as non-existent." *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (citation omitted).

---

[8] The district court's finding that plaintiff "refused to participate in indoor recreation" does not satisfy the issue preclusion requirements because the issues are not identical. Habeas Op. 8. Here, plaintiff does not dispute that he declined to participate in indoor recreation; instead, he contends that he was denied all outdoor exercise while housed in solitary confinement. SAC 13-15, ECF #76.

Therefore, in an amended complaint each claim and the involvement of each defendant must be sufficiently alleged.

## VII. Plaintiff's Motion

Plaintiff contends that this court must convert defendants' motion to dismiss to a motion for summary judgment because defendants have submitted documents "that are not allowed" in support of their motion. Pl.'s Resp. 4, ECF #107. A court must normally convert a motion to dismiss to a motion for summary judgment where the court "considers matters outside the pleadings." F.R.C.P. 12(d). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A court may take judicial notice of its own files and of documents filed in other courts" for the purpose of determining the prior judgment's preclusive effect. *Silas v. Argent Mortg. Co.*, 1:17–cv–00703–LJO–JLT, 2017 WL 6055842, at *3 (E.D. Cal. Dec. 7, 2017) (collecting cases). Plaintiff's motion is therefore denied.

## CONCLUSION

For the reasons discussed, defendants' motions to dismiss (ECF ##77, 110, 116) are granted in part and denied in part, and plaintiff's motion (ECF ##107) is denied. Plaintiff may file an amended complaint curing the deficiencies set forth in this order within 30 days. Failure to do so will result in dismissal of this case.

IT IS SO ORDERED.

DATED February 5, 2020

_____/s/ Youlee Yim You_____
Youlee Yim You
United States Magistrate Judge