UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION


BRADLEY WILLIAM MONICAL,

                Plaintiff,

      v.

JACKSON COUNTY, et al,

                Defendants.

                          Case No. 1:17-cv-00476-YY

                          OPINION AND ORDER


YOU, Magistrate Judge:

     *Pro se* plaintiff Bradley William Monical brings this 42 U.S.C. § 1983 suit against

Jackson County and other defendants, alleging claims arising out of his incarceration in the

Jackson County Jail.  Plaintiff filed his original complaint on March 24, 2017.  On September 7,

2017, this court dismissed the original complaint because it consisted of a "69-page narrative"

that failed to comply with Federal Rule of Civil Procedure 8(a)(1)'s "short and plain statement"

standard.  Order 3, ECF 9.  The court also found that any claims based on events that occurred

before March 24, 2015, were barred as they were outside the two-year statute of limitations for §

1983 claims.  *Id.* at 4.

     Plaintiff filed a Second Amended Complaint ("SAC") on July 11, 2018.  SAC, ECF 76.

The SAC alleged claims for (1) denial of access to courts, (2) unconstitutional conditions of

confinement, (3) First Amendment violations, and (4) due process violations. *Id.* at 9-30. Defendants filed motions to dismiss (ECF #77, 110, 116), contending the case should be dismissed because plaintiff's claims were barred by the *Heck* doctrine[1] and untimely. In response, plaintiff filed a motion to convert the motions to dismiss to motions for summary judgment. ECF 107.

On February 5, 2020, the court granted defendants' motions in part and denied plaintiff's motion, finding some of plaintiff's claims were barred by the statute of limitations and some were foreclosed for other reasons. Opinion and Order, ECF 141. The court granted plaintiff leave to "file an amended complaint curing the deficiencies" within 30 days. *Id.* at 33.

On March 30, 2020, plaintiff filed a Third Amended Complaint ("TAC") against defendants "Jackson County, Mike Winters, Corey Falls, Danny Pendland, Joshua Aldrich, Russel Beane, Andrew Davis, Troy Hamilton, Timothy Higgins" (collectively "defendants"), and ACE LLC,[2] again asserting claims for: (1) denial of access to courts, (2) unconstitutional conditions of confinement, (3) First Amendment violations, and (4) due process violations. TAC 13-33, ECF 150.

Defendants have filed a motion to dismiss the TAC pursuant to Rule 41(b) and Rule 12(b)(6). Mot. Dismiss, ECF 160. To the extent the court does not dismiss plaintiff's claims,

---

[1] In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" Therefore, a § 1983 claim is barred by *Heck* if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" and if the conviction or sentence has not already been invalidated or called into question. *Id.* at 487.

[2] This new defendant, ACE LLC, is discussed in Sect. III, *infra*.

defendants move for a more definite statement pursuant to Rule 12(e).  *Id.* at 2.  Defendants also move the court to enter an order declaring plaintiff a vexatious litigant with regard to any future amended complaint.  *Id.*

For the reasons discussed below, defendants' Rule 12(b)(6) motion to dismiss is granted in part and denied in part, and defendants' Rule 41(b) motion to dismiss, Rule 12(e) alternative motion for a definite statement, and motion to treat plaintiff as a vexatious litigant are denied.

## DISCUSSION

### I.    Rule 41(b) Motion to Dismiss

Defendants move for dismissal pursuant to Rule 41(b), or in the alternative for sanctions, because plaintiff "has willfully disregarded orders of this court relating to the claims that the Plaintiff may plead in his Complaint."  Mot. Dismiss 7-10, ECF 160.

Under Rule 41(b), a defendant may move to dismiss an action "if the plaintiff fails . . . to comply . . . with a court order."  A dismissal under Rule 41(b) "operates as an adjudication on the merits" unless the dismissal states otherwise.  *Id.*  Because dismissal under Rule 41(b) "is so harsh a penalty[,] it should be imposed as a sanction only in extreme circumstances."  *Lal v. California*, 610 F.3d 518, 525 (9th Cir. 2010) (quoting *Dahl v. City of Huntington Beach*, 84 F.3d 363, 366 (9th Cir. 1996)).

"In determining whether to dismiss a case for failure to comply with a court order, district courts must weigh five factors: (1) the public interest; (2) the court's need to manage the docket; (3) the risk of prejudice to the defendant; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives."  *Bautista v. Los Angeles Cty.*, 216 F.3d 837, 841 (9th Cir. 2000).  "Although it is preferred, it is not required that the district court make explicit findings in order to show that it has considered these factors[.]"  *Applied*

*Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 890 n.2 (9th Cir. 2019) (citation and internal quotation marks omitted).

The threshold question in the Rule 41(b) analysis is whether plaintiff failed to comply with a court order. Defendants argue that, in the TAC, plaintiff realleges claims in violation of this court's September 9, 2017 Order and February 5, 2020 Opinion and Order. Mot. Dismiss 8, ECF 160 (citing TAC 2, 3, 4, 10, ECF 150; Order Dismiss 4, ECF 9; Opinion and Order 2, 14, 20, 22, ECF 141). While is true that plaintiff again alleges some facts outside the relevant period and repeats some arguments, there are ways in which the TAC is different from and amends claims as ordered by the court. *Compare* TAC, ECF 150, *with* SAC, ECF 76. For example, the court dismissed plaintiff's deliberate-indifference-to-serious-medical-needs claim with prejudice as untimely, and plaintiff did not replead this claim. *See* Opinion and Order 23, ECF 141; TAC, ECF 150. Thus, the extent to which the TAC fails to comply with the court's orders is "not so egregious to warrant dismissal" or sanctions. *Mazzaferro v. Parisi*, No. C 16-05641 WHA, 2017 WL 2902797, at *2 (N.D. Cal. July 7, 2017). Moreover, it is well settled that where a plaintiff appears *in pro per* in a civil rights case, the court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988). Accordingly, defendants' Rule 41(b) motion is denied.

## II.     Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) allows for motions to dismiss for "failure to state a claim upon which relief can be granted." When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations of the operative complaint as true and construe the pleadings in the light most favorable to the plaintiff. *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001) (internal quotations omitted); *see also Lujan v. National Wildlife Federation*, 497 U.S. 871, 889

(1990) (citation omitted) ("[A] Rule 12(b) motion to dismiss on the pleadings, unlike a motion for summary judgment, presumes that general allegations embrace those specific facts that are necessary to support the claim.").

### A.    Inconsistent Allegations

Defendants claim that, in the TAC, plaintiff has "altered dates and facts from previous complaints in an apparent attempt to revive claims already dismissed by this court" and alleged facts that are "inconsistent" even with the documents that plaintiff has attached to the TAC. Mot. Dismiss 9, 17-18, 23, 25, ECF 160. Defendants contend this makes "clear that Plaintiff has failed to allege" sufficient facts to survive a motion to dismiss. *Id.* at 17-18.

### 1.    Between the TAC and Previous Complaints

Defendants contend that "[p]laintiff has altered the facts he has alleged in previous complaints and re-pleaded in [the TAC]," *inter alia*, "in order to comply with the statute of limitations[,]" and that these "blatantly self-contradicting facts" should be "view[ed] with distrust." Mot. Dismiss 24, ECF 160. Defendants point to factual inconsistencies in support of plaintiff's claims related to (1) conditions of confinement subclaims for denial of adequate exercise, infrequent showers, and time in solitary confinement, and (2) First Amendment subclaims for denial of telephone access and denial of free exercise of religion. *Id.* at 18-19, 23-24, 24-26, 27-28 (citing Compl. 20, 21, 46, 48 ECF 1; First Amended Complaint 29, ECF 16; SAC 18, 24, ECF 76; TAC 25, 26, 27, 30, ECF 150).

However, the Ninth Circuit has held:

[T]here is nothing in the Federal Rules of Civil Procedure to prevent a party from filing successive pleadings that make inconsistent or even contradictory allegations. Unless there is a showing that the party acted in bad faith—a showing that can only be made after the party is given an opportunity to respond under the procedures of Rule 11—inconsistent allegations are simply not a basis for striking the pleading.

*PAE Gov't Servs. v. MPRI, Inc.*, 514 F.3d 856, 860 (9th Cir. 2007). Defendants have made no such showing of bad faith here. Moreover, "[i]f a party believes that its opponent pled in bad faith, it can seek other means of redress, such as sanctions under Rule 11, 28 U.S.C. § 1927 or the court's inherent authority." *Id.* Further, defendants are free to utilize the earlier allegations and attachments in deposing plaintiff, and if necessary, on cross examination, as well as testing the sufficiency of plaintiff's evidence in an appropriate motion under Rule 56.

### 2.    Between the TAC and Attached Exhibits

Defendants also argue that conflicts between plaintiff's factual allegations and "information [plaintiff] provides [as attachments to] his own pleadings" establishes a basis to determine that "[p]laintiff has failed to allege facts sufficient to state a claim for which relief can be granted." Mot. Dismiss 31-33, ECF 160. Defendants point to inconsistencies between plaintiff's TAC and the attachments to argue that plaintiff's subclaim for denial of adequate exercise under his conditions of confinement claim and his First Amendment subclaim for retaliation should be dismissed. Mot. Dismiss 19, 31-33 (citing TAC 20, 31-32, Monical Decl., Attachs. E, H, I, N, ECF 151).

However, the court must view the factual allegations in the TAC in the light most favorable to plaintiff, accept the factual allegations as true, and address whether the facts plaintiff alleges in his TAC are sufficient to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Here, the attachments do not "unambiguously contradict plaintiff's factual allegations."[3] *Gordon v. Sniff*, No.

---

[3] For example, plaintiff alleges that he had gained 40 pounds by the time he left the Jackson County Jail, which was in September 2015. TAC 20, ECF 150. Plaintiff's mother attests that plaintiff "was so skinny that [she] hardly recognized him" at his trial in January 2014." Bonnie Farlow Decl. ¶ 2, ECF 152.

EDCV1600979ODWAFM, 2017 WL 1745069, at *3 (C.D. Cal. Apr. 28, 2017), *report and recommendation adopted,* 2017 WL 1740017 (C.D. Cal. May 2, 2017) ("The Court rejects defendant's apparent contention that the cited exhibits to plaintiff's Complaint unambiguously contradict plaintiff's factual allegations.") (citing *Simon v. City of Phoenix*, 436 F. App'x 756, 757 (9th Cir. 2011) (reversing the district court's dismissal of a *pro se* plaintiff's excessive force claim where the district court had credited contradictory, "disputed and inconsistent officer statements in the attachments to [plaintiff's] complaint" to find that plaintiff's account of his encounter with the officers was not plausible); *cf. Sprewell v. Golden State Warriors,* 266 F.3d 979, 988-89 (9th Cir. 2001) (holding plaintiff's attachments pled him "out of a claim" where they set forth *uncontested* facts that effectively and persuasively rebutted the complaint's conclusory allegations).

### B.    Former Sheriff Michael Winters

Winters retired in November 2014, and there is no authority to apply § 1983 liability for jail conditions that existed after his retirement.  *See Estate of Sandra Vela v. Cty. of Monterey*, No. 16-cv-02375, 2016 WL 4678300, at *8 (N.D. Cal. Sept. 7, 2016) (dismissing a § 1983 action and noting that "the Court has not discovered a single case holding that a retired sheriff may be liable for constitutional deprivations arising from jail conditions that existed *after* his retirement") (emphasis in original).

Plaintiff alleges that his claims against Winters may be pursued under the continuing violations doctrine, *i.e.*, his "claims for, 'outdoor exercise', 'denial of access to the courts', 'denial of access to religion', 'inadequate lighting' etc. all began with and continued on by the tacit direction and approval of sheriff Winters."  Resp. 23, ECF 184.  However, plaintiff's argument that the continuing violations doctrine applies to his conditions of confinement claims

has already been rejected by the court. *See* Opinion and Order 19-20, ECF 141. Accordingly, all claims against Winters are dismissed.

### C.    Access to Courts (Claim One)

Plaintiff claims defendants violated his constitutional right of access to courts when they caused him to lose his right to file for state post-conviction relief in connection with Coos County Case No. 11CR0581 and Jackson County Case No. 113373FE, and prevented him from filing a § 1983 conditions of confinement claim against them. TAC 2-3, 13-14, ECF 150.

#### 1.    Relevant Law Regarding Access to Courts

An inmate has a constitutionally protected right of meaningful access to the courts under the Fourteenth Amendment. *Bounds v. Smith*, 430 U.S. 817, 828 (1977), *abrogated in part on other grounds by Lewis v. Casey*, 518 U.S. 343 (1996). ECF 150. However, that right is not "an abstract, freestanding right to a law library or legal assistance." *Lewis*, 518 U.S. at 351. "In other words, prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Id.* (citation omitted). Thus, "an inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Id*. Instead an inmate "must . . . demonstrate that the alleged shortcomings . . . hindered his efforts to pursue a legal claim." *Id.* "Depriving someone of an arguable (though not yet established) claim inflicts actual injury because it deprives him of something of value." *Id.* at 353 n.3.

#### 2.    Application of Continuing Violations Doctrine

Plaintiff argues that all of his alleged access to courts claims and facts underlying them are timely, including those that took place before March 24, 2015, under the continuing

violations doctrine. Resp. 11, ECF 184. In the SAC, plaintiff realleged claims based on events that occurred outside of the limitations period, but the court did not address whether the continuing violations doctrine applied to his access to courts claim, only the conditions of confinement claim. *See* Opinion and Order 19-20, ECF 141. Nevertheless, the same reasoning precludes the continuing violations doctrine from applying to plaintiff's access to courts claim.

"Although the continuing violations doctrine is most frequently seen in the context of employment discrimination suits, [the Ninth Circuit has] held that the continuing violations doctrine also applies to § 1983 claims." *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 746 (9th Cir. 2019). "'The doctrine of continuing violations . . . is actually a conglomeration of several different ideas,' . . . the essence of which is that 'when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.'" *Id.* (quoting *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982), and *Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (9th Cir. 2014)). Historically, the Ninth Circuit "recognized two applications of the continuing violations doctrine: first, to 'a series of related acts, one or more of which falls within the limitations period,' and second, to 'the maintenance of a discriminatory system both before and during [the limitations] period.'" *Id.* (quoting *Gutowsky v. County of Placer*, 108 F.3d 256, 259 (9th Cir. 1997)) (alteration in original).

However, after the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002) ("*Morgan II*"), "little remains of the continuing violations doctrine." *Bird*, 935 F.3d at 748. In *Morgan II*, the Supreme Court held that "discrete . . . acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete . . . act starts a new clock for filing charges alleging that act." *Id.* at 747

(quoting *Morgan II*, 536 U.S. at 113). "Except for a limited exception for hostile work environment claims—not at issue here—the serial acts branch is virtually non-existent." *Id.* at 748.

"Although the Supreme Court in *Morgan II* addressed only the serial acts branch of the continuing violations doctrine, . . . [the Ninth Circuit] has applied *Morgan II* to abrogate the systematic branch of the continuing violations doctrine as well." *Id.* at 747.

> For example, in *Lyons v. England*, 307 F.3d 1092, 1107 (9th Cir. 2002), we reasoned from *Morgan II* that a plaintiff's "assertion that [a] series of discrete acts flows from a company-wide, or systematic, discriminatory practice will not succeed in establishing the employer's liability for acts occurring outside the limitations period." Similarly, in *Cherosky*, the plaintiffs sought to avoid *Morgan II*'s unfavorable holding by arguing under the systematic branch of the continuing violations doctrine; the plaintiffs contended that they could still recover damages for acts of employment discrimination that had occurred prior to the statute of limitations period as long as those acts had been conducted pursuant to a discriminatory company policy. 330 F.3d at 1246. We rejected that argument, concluding instead that "[t]he allegation that ... discrete acts were undertaken pursuant to a discriminatory policy does not extend the statutory limitations period." 330 F.3d at 1247.

*Id.* "[W]hile [the Ninth Circuit has] left room for the systematic branch to apply to class-wide pattern-or-practice claims, . . . [it has] consistently refused to apply the systematic branch to rescue individualized claims that are otherwise time-barred." *Id.*

Here, plaintiff argues that defendants "denied access to the courts for two years and then turn around and claim statute of limitations based upon their earlier bad acts that caused the delay in the first place." Resp. 13, ECF 184. For instance, plaintiff argues that "defendants['] continued refusal to allow adequate legal library access, . . . or to have some type of legal assistance for persons held in segregation . . . effectively denied [him] all access to the courts continuously from 11/13/2013 to 9/28/2015. Their wrong conduct never ended." *Id.* at 9. He

contends that defendants "can not [sic] deny access to the courts and then claim they are safe from their earlier actions of denying access to the courts." *Id*. at 13.

Regardless, the Supreme Court and Ninth Circuit have made clear that the continuing violations doctrine does not apply to actions outside the statute of limitations in this case. For instance, a portion of plaintiff's access to courts claim pertains to his inability to file a direct appeal in his Coos County case, which was dismissed on September 13, 2013. TAC 14, ECF 150. Plaintiff contends that he "kyted both Danny Pendland and Joshua Aldrich along with the shift sergeants explaining my need to access the jail[']s law library," but did not receive a response.[4] *Id*. He also claims he did not know about a memo "denying me any out of cell movement." *Id*. These discrete acts about which plaintiff complains "are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete . . . act starts a new clock for filing charges alleging that act." *Bird*, 935 F.3d at 747. And, as discussed above, the Ninth Circuit has "consistently refused to apply the systematic branch [of the continuing violations doctrine] to rescue individualized claims that are otherwise time-barred." *Id*. Plaintiff claims he continued to suffer from these acts; however, the "mere 'continuing impact from past violations is not actionable.'" *Knox*, 260 F.3d at 1013 (emphasis and citation omitted). Thus, the continuing violations doctrine does not save any claim for denial of access to courts for actions that took place before March 24, 2015.

### 3.    Coos County Case No. 11CR0581

As noted above, plaintiff's Coos County case was dismissed on September 13, 2013. Thus, any claim regarding denial of access to courts to file a direct appeal would have accrued 30

---

[4] "A Kyte is an inmate communication form." *Galligar v. Franke*, No. 2:12–cv–01891–PKm 2015 WL 10373492, at *2 (D. Or. Dec. 28, 2015).

days thereafter, or 90 days with a particular showing. *See* O.R.S. 138.071(1) and (5); Opinion

and Order 18, ECF 141.

The court previously found that plaintiff's claim regarding the state post-conviction

petition, which accrued on September 13, 2015, falls within two years of the date plaintiff filed

his complaint, March 24, 2017. Opinion and Order 17, ECF 141. However, as previously

decided, plaintiff's claim regarding a federal habeas petition is time-barred, because such a claim

had to be filed within one year of his conviction, by September 13, 2014. *Id.*

Defendants argue that plaintiff had access to the law library in April 2015, sent kytes for

law library access in October 2014, and was in contact with at least one criminal defense

attorney, Terry Kolkey, demonstrating he had "reasonable access to the justice system." Mot.

Dismiss 12-13, ECF 160. However, plaintiff alleges that he had access to the law library on

April 20, 2015, for only 30 minutes, and the court must accept all factual allegations in the

complaint as true. TAC 12, ECF 150. Moreover, the record reflects that Kolkey represented

plaintiff in his federal criminal case, *United States v. Bradley Monical*, 13-cr-00365-MC. ECF

151, at 12. Construing the complaint in the light most favorable to plaintiff, the court cannot

conclude that an attorney appointed to represent plaintiff in a federal criminal prosecution would

have been available to assist plaintiff in the pursuit of remedies related to his state criminal

convictions.

### 4.    Jackson County Case No. 113373FE

This court previously decided that any claim based on plaintiff's failure to file a direct

appeal is barred by the statute of limitations. Opinion and Order 18, ECF 141. However,

plaintiff's claim regarding the failure to file a federal habeas petition is not foreclosed, as the

one-year statute of limitations for that claim would have expired on May 23, 2015. *Id.* The

same is true with respect to a claim regarding a post-conviction petition, as that claim would have accrued on May 22, 2016, two years after plaintiff was convicted.

### 5. Conditions of Confinement Claim

In his SAC, plaintiff claimed that "on 12/2013 [he] would have started a civil suits claim against the defendants listed had he been given access to the courts." SAC 11, ECF 76. Plaintiff repeats the same claim in his Third Amended Complaint. TAC 16, ECF 150. The court's prior order did not specifically address this claim. Nevertheless, it does not fall within the two-year statute of limitations, as the allegation predates March 24, 2015.

### D. Conditions of Confinement (Claim Two)

### 1. Application of Continuing Violations Doctrine

Plaintiff asserts that the continuing violations doctrine applies with respect to his conditions of confinement claim. Resp. 29, ECF 184. The court previously found that the continuing violations doctrine did not apply to allegations pertaining to conditions of confinement claims outside the statutory period, *i.e.*, before March 24, 2015. Order Dismiss 4, ECF 9; Opinion and Order 2, 19-20, ECF 141. The discrete acts about which plaintiff complains are not covered by the continuing violations doctrine. *See Bird*, 935 F.3d at 747-48. Accordingly, only the factual allegations within the statutory period—between March 24, 2015, and September 28, 2015, the day plaintiff was released from Jackson County custody—may constitute the basis for any conditions of confinement claim in this case.

//

//

//

//

2.        **Relevant Law**

Plaintiff asserts defendants violated his rights under the Eighth and Fourteenth

Amendments.[5] TAC 18, ECF 150.  The Eighth Amendment's cruel and unusual punishment

clause applies to prisoners who have been convicted of crimes, and the Fourteenth Amendment's

due process clause applies to pretrial detainees.  *Oregon Advoc. Ctr. v. Mink*, 322 F.3d 1101,

1120 (9th Cir. 2003).  "Due process requires that a pretrial detainee not be punished.  A

sentenced inmate, on the other hand, may be punished, although that punishment may not be

'cruel and unusual' under the Eighth Amendment." *Bell v. Wolfish*, 441 U.S. 520, 537 n.16

(1979).

The Eighth Amendment requires public officials to "provide humane conditions of

confinement[,] . . . ensure that inmates receive adequate food, clothing, shelter, and medical care,

and . . . 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan,*

511 U.S. 825, 832 (1994) (citation omitted).  Nevertheless, "[b]ecause routine discomfort is 'part

of the penalty that criminal offenders pay for their offenses against society,' . . . 'only those

deprivations denying the 'minimal civilized measure of life's necessities' are sufficiently grave

to form the basis of an Eighth Amendment violation." *Hudson v. McMillian,* 503 U.S. 1, 9

(1992) (citations omitted).

To establish an Eighth Amendment violation, the plaintiff must make an objective and

subjective showing.  *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009).  "First, an inmate

must objectively show that he was deprived of something 'sufficiently serious.'" *Id.*

(quoting *Farmer,* 511 U.S. at 834).  "A deprivation is sufficiently serious when the prison

---

[5] Plaintiff also asserts a Fourth Amendment violation, which is discussed in the context of his
strip-search claim.

official's act or omission results in the denial of the minimal civilized measure of life's necessities." *Id.* (quotations marks and citation omitted). "The inmate must then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Id.* (citing *Farmer*, 511 U.S. at 834).

> Deliberate indifference "involves a two-part inquiry":
>
> First, the inmate must show that the prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. This part of our inquiry may be satisfied if the inmate shows that the risk posed by the deprivation is obvious. *See id.* at 842, 114 S.Ct. 1970 ("[A] factfinder may conclude that a prison official knew of a substantial risk [to a prisoner's health] from the very fact that the risk was obvious."). Second, the inmate must show that the prison officials had no "reasonable" justification for the deprivation, in spite of that risk. *See id.* at 844, 114 S.Ct. 1970 ("[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably.").

*Id.* at 1150-51 (alterations in original).

Under the Fourteenth Amendment, only an objective analysis applies. *See Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (holding that objective standard applies to Fourteenth Amendment claims regarding denial of adequate medical care). A pretrial detainee must show: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in similar circumstances would have appreciated the high degree of risk—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at 1125.

"With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Id.* (quoting *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016))

(alteration in original).  The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id*. (quoting *Castro*, 833 F.3d at 1070).  "[T]he plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*  "This differs from the inquiry under the Eighth Amendment which requires that 'the prison official must *subjectively* have a sufficiently culpable state of mind.'" *Id.* at 1125 n.4 (quoting *Castro*, 833 F.3 at 1070-71) (emphasis in original).

Moreover, "if a particular condition or restriction of pre-trial detention is reasonably related to a legitimate governmental objective, it does not without more, amount to 'punishment.'" *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1205 (9th Cir. 2008) (quoting *Bell*, 441 U.S. at 539).  "Legitimate nonpunitive governmental objectives include 'maintaining security and order' and 'operating the [detention facility] in a manageable fashion.'" *Id.* (quoting *Bell*, 441 U.S. at 540 n.23).

Defendants apply an Eighth Amendment analysis to plaintiff's claims.  However, plaintiff alleges that he was not serving a sentence while in the custody of the Jackson County jail.  Plaintiff alleges that he was "sentenced to the ODOC in July of 2011" and "removed from the physical custody of the ODOC by order of the Jackson County Courts . . . on or about 8/16/2011." TAC 10, ECF 150.  Plaintiff contends that he was "a pre-trail detainee while at the Jackson County Jail under Oregon statute ORS 135.767, and not under contract with the Oregon Department of Corrections (ODOC) to be housed and punished under conviction by Jackson the county sheriff." *Id.* at 1.  The court must construe the complaint in the light most favorable to plaintiff.

Nevertheless, Eighth Amendment analysis regarding conditions of confinement is instructive in assessing Fourteenth Amendment claims. *Mink*, 322 F.3d at 1120 ("In light of the Supreme Court's observation that the due process rights of pre-trial detainees are 'at least as great as the Eighth Amendment protections available to a convicted prisoner,' . . . we have recognized that, even though the pre-trial detainees' rights arise under the Due Process Clause, the guarantees of the Eighth Amendment provide a *minimum standard of care* for determining their rights.") (emphasis in original); *Seed v. Hudson*, No. CIV. A. 93-0008, 1994 WL 229096, at *3 (D. N. Mar. I. May 11, 1994) (observing that "prison conditions which would constitute cruel and unusual punishment under the Eighth Amendment would, by definition, constitute impermissible punishment under the Fourteenth Amendment"). "Although the Fourteenth Amendment governs the rights of a pretrial detainee, the Eighth Amendment provides a 'minimum standard of care.'" *Norbert v. San Francisco Sheriff's Dep't*, No. 19-CV-02724-SK, 2020 WL 8675997, at *15 (N.D. Cal. Jan. 31, 2020) (quoting *Jones v. Johnson*, 782 F.2d 769, 771 (9th Cir. 1986)); *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (recognizing "the Fourteenth Amendment prohibits all punishment of pretrial detainees, while the Eighth Amendment only prevents the imposition of cruel and unusual punishment").

As discussed below, most of plaintiff's conditions of confinement claims survive, even applying the more stringent deliberate indifference component of the Eighth Amendment standard, and when they do not, it is because they have not satisfied the objective component that applies to both Eighth Amendment and Fourteenth Amendment claims.

### 3.    Outdoor Exercise

Plaintiff contends that "[b]etween the dates of 11/14/2013 to 9/28/2015 [he] was denied all outdoor exercise and substantially any indoor exercise as they refused to provide any

footwear from which exercise could be performed in." TAC 18, ECF 150. Plaintiff alleges that as a result, he gained over 40 pounds, his mental health suffered, and he experienced muscle atrophy. TAC 18-20, ECF 150. In his response, plaintiff clarifies that this claim has "nothing to do" with indoor exercise, only outdoor exercise. Resp. 36, ECF 184. Accordingly, the court treats the instant claim as one for denial of outdoor exercise. Also, due to the statute of limitations, plaintiff's claim is limited to the time period between March 24, 2015, and September 28, 2015, a period of 188 days.

"[E]xercise is one of the most basic human necessities protected by the Eighth Amendment." *Thomas v. Ponder*, 611 F.3d 1144, 1151–52 (9th Cir. 2010) (citation omitted); *see also Spain v. Procunier,* 600 F.2d 189, 193-94 (9th Cir. 1979) ("[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates."). "Like food, it is 'a basic human need.'" *Id.* (quoting *Keenan v. Hall,* 83 F.3d 1083, 1091 (9th Cir. 1996)).

Plaintiff has sufficiently alleged the objective component: denying plaintiff exercise for 188 days is sufficiently serious to constitute a violation under either the Eighth Amendment or the Fourteenth Amendment. *See Lopez v. Smith*, 203 F.3d 1122, 1133 (9th Cir. 2000) (holding that denial of exercise for six and one-half weeks established an Eighth Amendment claim); *Thomas*, 611 F.3d at 1146 (13 months and 25 days); *Allen*, 48 F.3d at 1087-88 (six weeks); *LeMaire v. Maass,* 12 F.3d 1444, 1457 (9th Cir. 1993) (holding "ordinarily the lack of outside exercise for extended periods is a sufficiently serious deprivation" for Eighth Amendment purposes); *Pierce v. Cty. of Orange*, 526 F.3d 1190, 1211–12 (9th Cir. 2008) ("[T]he Fourteenth Amendment requires that pre-trial detainees not be denied adequate opportunities for exercise without legitimate governmental objective.").

Additionally, plaintiff has alleged that "prison officials knew of the length and scope of [his] confinement without outdoor exercise." *Thomas*, 611 F.3d at 1152. The denial of outdoor exercise for an "extended period of time" poses an "obvious" health risk to a plaintiff. *Id.* at 1146; *see also Arline v. Gower*, No. 2:11–cv–3414 WBS KJN P, 2014 WL 3687497, at *12 (E.D. Cal. July 23, 2014) (concluding prison officials were aware of potential consequences of depriving an inmate of outdoor exercise for 84 days); *Jackson v. Houston*, No. 07-cv-1108 L(POR), 2011 WL 1361062, at *3 (S.D. Cal. Apr. 11, 2011) (concluding the risk of denying outdoor exercise for 42 days was obvious). Plaintiff also has alleged that the deprivation of outdoor exercise was without justification. *See* TAC 19, ECF 150 ("There was no apparent justification for this denial of exercise as I had been placed in general population and the outdoor air recreation room had been secured before my arrival back to the jail."). Thus, plaintiff has sufficiently alleged the subjective component of the Eighth Amendment test as well.

### 4.    Inadequate Lighting

Plaintiff alleges "defendants denied [him] adequate lighting." TAC 20, ECF 150. He claims "[t]he general population cells were not so bad during daylight hours as they had outside light exposure through the windows." *Id.* However, after dark, "[t]he lighting was so bad that deputies could not see [him] inside the cell without putting their foreheads to the window and blocking out the hallway light so they could see inside." *Id.* at 21. "Reading inside these cells was like trying to read by candlelight with the candle 10 foot from you." *Id.* Plaintiff contends that on April 2, 2015, he sent prison staff a kyte about the lighting conditions, stating: "I have talked to Officers Higgins and DeConstanza on multiple days regarding the light bulb in my cell being replaced this is a living conditions issue since 3-18-15—could I get a grievance about this condition[?]" TAC 21, ECF 150; Monical Decl., attach. D, ECF 151. Sgt. Davis responded: "I

put a maintenance request to get your light bulb replaced today.  This should resolve your living condition issue.  This is the first I'm aware that you had inadequate light in your cell." *Id.* Plaintiff acknowledges that he received new light bulbs, but alleges that "[w]hile ACE maintenance employee's did change the dimmer light bulbs out for brighter ones, the new ones were still not bright enough to read by without eyestrain." TAC 21, ECF 150.  He claims, "When they replaced the light bulbs it was like trying to read with three candles only 5 foot from you" and it "still hurt my eyes trying to read." *Id*.  Plaintiff alleges that because of poor lighting "my eye's [sic] were permanently damaged.  My eyes went from being able to read for 12 hours straight without glasses, prior to being placed into these cells, to not being able to read a single line of text under 24 point without glasses, when I left the jail on 9/28/2015." *Id.* at 22.

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." *Hoptowit v. Spellman,* 753 F.2d 779, 783 (9th Cir. 1985); *see also Martino v. Carey*, 563 F. Supp. 984, 1000 (D. Or. 1983) (collecting illumination cases).  The lighting conditions that plaintiff alleges satisfy the objective component of both the Eighth Amendment and Fourteenth Amendment.  *See Hoptowit,* 753 F.2d at 783 (upholding district court's decision finding Eighth Amendment violation where "lighting was so poor that it was inadequate for reading and caused eyestrain and fatigue and hindered attempted to insure that basic sanitation was maintained").

With respect to the subjective prong, plaintiff alleges that prison officials were aware of the lighting conditions, there was a policy against allowing brighter lighting, he "asked every officer I could," and wrote kytes, but they were never returned.  TAC 21, ECF 150. Plaintiff has sufficiently alleged deliberate indifference for purposes of his inadequate lighting claim.

### 5.    Strip Searches

Plaintiff alleges defendants "subjected [him] to continuous humiliating strip searches without real justification."  TAC 22, ECF 150.  He claims defendants "required me to strip search and do a body cavity check before I exited and upon returning to my cell" and that these searches were required even when he had not left the presence of the officers.  *Id.* at 23.  Plaintiff contends that after he was "temporarily placed in general population" and "supposedly cleared of the strip search requirements," officers still required him to submit to strip searches.  *Id.*  Plaintiff asserts "[a]s far as I knew, . . . these strip searches were only done to humiliate me." *Id.* at 22-23.  He also claims that officers made comments about his genitals and weight, and one time an officer joked to his co-workers that he should "shove a mop handle up my ass to search for escape devices."  *Id.* at 23.  Plaintiff contends that he has "become self conscience about my appearance and lost belief in the kindness of the human race and law enforcement."  *Id.*

The alleged statements by prison officers do not rise to a constitutional violation.  *See Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997) ("We are mindful of the realities of prison life, and while we do not approve, we are 'fully aware that the exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this nation's prisons.'") (quoting *Morgan v. Ward,* 699 F. Supp. 1025, 1055 (N.D.N.Y. 1988)); *Watison v. Carter,* 668 F.3d 1108, 1112-13 (9th Cir. 1997) (finding plaintiff's "humiliation" not enough to constitute an objectively serious injury and dismissing Eighth Amendment claim on objective prong); *see also* 42 U.S.C. § 1997e ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).").

However, strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" are unreasonable under the Fourth Amendment. *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988). Thus, plaintiff has sufficiently alleged a Fourth Amendment claim.

### 6.    Noise

Plaintiff alleges that the jail's laundry "operated almost 24/7" and the machines "operated in unbalanced loads or . . . were broken." TAC 24, ECF 150. Plaintiff contends, "[r]egardless of the reason why, the result was that the machines continuously banged against the cinder block walls, day and night, to a deafening level," and he could not sleep for almost six months causing a "general decline in mental health." *Id.*

"[T]he Eighth Amendment require[s] that [persons in custody] be housed in an environment that, if not quiet, is at least reasonably free of excess noise." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (citation, internal quotation marks omitted, and alterations omitted); *see also Toussaint v. McCarthy,* 597 F. Supp. 1388, 1397, 1410 (N.D. Cal. 1984) *reversed in part on other grounds,* 801 F.2d 1080, 1110 (9th Cir. 1986) (finding an "unrelenting, nerve-racking din" satisfied objective prong). Plaintiff has sufficiently pleaded the objective prong of a conditions of confinement claim based on excessive noise.

As to defendants' awareness of the harm or the obviousness of its risk, *i.e.*, the subjective element, plaintiff alleges:

> I asked to be moved to another cell but was denied. I requested a grievance form for the noise and was denied. I sent kytes to the ACE maintenance personnel asking for the machines to be fixed so that they would not bang, no reply ever came and no change ever happened.

TAC 24, ECF 150. When these allegations are accepted as true, they support a reasonable inference that defendants were deliberately indifferent in that they were aware of the noise yet

ignored plaintiff's complaints. Accordingly, to the extent the noise described in this claim occurred within the statute of limitations, defendants' motion to dismiss this claim is denied.

Defendants ask that, if their motion to dismiss is denied, plaintiff should be ordered pursuant to Rule 12(e) to provide a more definite statement of when the alleged offenses occurred. "A Rule 12(e) motion for more definite statement is disfavored and is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, meaning the complaint is so vague that the defendant cannot begin to frame a response." *Martin v. City of Portland*, No. 3:19-CV-1647-SI, 2020 WL 363391, at *2 (D. Or. Jan. 21, 2020) (citation omitted). "Rule 12(e) is designed to strike at unintelligibility, rather than want of detail." *Id.* (citation omitted). "Finally, when the detail sought is available through discovery, the motion should be denied." *Id.* Because the detail that defendants seek can be ascertained through discovery, the motion for more definite statement is denied.

### 7. Showers

Plaintiff alleges he "was not allowed regular showers." TAC 24, ECF 150.

Prison officials have a duty to ensure prisoners are provided adequate sanitation. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted). "[S]ubjection of a prisoner to lack of sanitation that is severe or prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." *Anderson v. County of Kern*, 45 F.3d 1310, 1314, *as amended*, 75 F.3d 448 (9th Cir. 1995). In the same respect, denying showers for a pretrial detainee can be viewed as impermissible punishment under the Fourteenth Amendment.

Courts have held that a denial of showers for a week or longer does not rise to the level of an objective deprivation. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) ("limiting inmates to weekly showers does not violate the Eighth Amendment"); *Centeno v.*

*Wilson,* No. 1:08–CV–1435–FJM, 2011 WL 836747 (E.D. Cal. March 4, 2011) (holding that the denial of showers for seven days did not amount to an Eighth Amendment violation); *Pamer v. Schwarzenegger*, No. CIV S-07-1902-MCE, 2010 WL 5418867, at *5 (E.D. Cal. Dec. 23, 2010), *report and recommendation adopted*, 2011 WL 1221198 (E.D. Cal. Mar. 29, 2011) (15 days). "While the Ninth Circuit has not made any definitive determination as to how many showers are required per week for inmates, it has certainly not held that daily showers are required." *Hernandez v. Olmos*, No. 1:11CV01495 LJO DLB, 2013 WL 5718566, at *3 (E.D. Cal. Oct. 18, 2013), *report and recommendation adopted,* 2013 WL 6230269 (E.D. Cal. Dec. 2, 2013).

Here, plaintiff alleges he had "gone up to 13 days between showers and rarely got more th[a]n one per week." TAC 25, ECF 150. Plaintiff has not alleged facts showing the conditions were so unsafe or unsanitary that they violated the Eighth or Fourteenth Amendments. Because plaintiff's allegations fail to satisfy the objective prong, this claim is dismissed.

### 8.    Solitary Confinement

Plaintiff alleges that defendants violated his constitutional rights by placing him in solitary confinement for approximately six months, from March 18, 2015, through September 28, 2015. TAC 25, ECF 150. Again, to the extent plaintiff alleges any acts that occurred before March 24, 2015, they are time-barred.

"The Eighth Amendment standards for conditions in isolation, segregation, and protective custody cells are no different from standards applying to the general population." *Hoptowit*, 682 F.2d at 1258. Thus, "[a]n indeterminate sentence in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment." *Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315-16 (9th Cir.), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995); *see Irvin v. Roldan*, No. CV 19-1418-AG (KK), 2019 WL 1129128,

at *3 (C.D. Cal. Mar. 12, 2019) (explaining that "a term of 24 months in solitary confinement, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment"). "[A]dministrative segregation, even in a single cell for twenty-three hours a day, is within the terms of confinement ordinarily contemplated by a sentence." *Anderson*, 45 F.3d at 1316. "Nothing so amorphous as 'overall conditions' in solitary confinement can rise to the level of cruel and unusual punishment when no specific deprivation of a human need exists." *Wilson*, 501 U.S. 304-05.

The Supreme Court has recognized that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (emphasis in original). However, otherwise, the court should not "examine conditions in the isolation, segregation, and protective custody units under the totality of conditions standard"; rather, the court "should consider the conditions in these units, and determine whether they amount to deprivations of the constitutional minima of the areas mandated by the Eighth Amendment" and "the remedy for any specific violations . . . must be tailored to correct the specific violation." *Hoptowit*, 682 F.2d at 1258.

Here, plaintiff alleges that when he was placed in isolation cell no. 1, he had "100% no contact from everyone," was not allowed to exercise and have regular showers, and was exposed to loud noise and poor lighting. TAC 26, ECF 150. As noted earlier, these conditions could implicate different basic needs. *See, e.g.*, *Keenan*, 83 F.3d at 1089 (holding that "[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and

long-term segregation"). However, the fact of being in solitary confinement is not, in and of

itself, a claim cognizable under the Eighth Amendment. This court "must follow the 'law of the

land,' which has long held that "solitary confinement . . . is not itself unconstitutional." *Mora-*

*Contreras v. Peters*, No. 6:18-CV-00678-SB, 2020 WL 2089479, at *4 (D. Or. Apr. 30, 2020)

(quoting *Thomasson v. Premo*, No. 14-01788-MO, 2017 WL 2403565, at *3 n.1 (D. Or. June 2,

2017)).

Under the Fourteenth Amendment, pretrial detainees have "no constitutional right to a

particular classification status." *Hernandez v. Johnson*, 833 F.2d 1316, 1318 (9th Cir. 1987).

However, a pretrial detainee may establish that he was punished for purposes of the Fourteenth

Amendment by showing that the governmental action (1) caused him "to suffer some harm or

'disability,'" and (2) the "purpose" of the classification was "to punish." *Demery*, 378 F.3d at

1030. It is not necessary that the harm "be independently cognizable as a separate constitutional

violation." *Id.* However, "the harm or disability caused by the government's action must either

significantly exceed, or be independent of, the inherent discomforts of confinement." *Id.*

The test for identifying unconstitutional punishment at the pretrial state of a criminal

proceeding "asks whether there was an express intent to punish, or 'whether an alternative

purpose to which [the restriction] may rationally be connected is assignable for it, and whether it

appears excessive in relation to the alternative purpose assigned [to it].'" *Id.* at 1028 (quoting

*Bell*, 441 U.S. at 538). While "[r]etribution and deterrence are not legitimate nonpunitive

governmental objectives," *Bell,* 441 U.S. at 539 n.20, "maintain [ing] security and order" at the

facility is, *id.* at 540.

Here, plaintiff alleges he was placed in solitary confinement for six months and subject to

conditions that harmed him in excess of the inherent discomforts of confinement. He also

alleges there was no legitimate nonpunitive objective for keeping him in solitary confinement for such a long period of time.  Thus, plaintiff has sufficiently alleged a Fourteenth Amendment violation.

### E.    First Amendment (Claim Three)

Plaintiff alleges First Amendment violations of his rights to freedom of speech, free exercise of religion, and against retaliation by defendants.  TAC 26-27, ECF 150.  Generally speaking, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

### 1.    Denial of Telephone Access

Plaintiff alleges that "[f]rom 3/17/2015 to 9/28/2015, [he] was denied the use of the jails [sic] phone system to place calls to family and friends."  TAC 27, ECF 150.  Again, only claims from March 24, 2015, to September 28, 2015, are timely.  Nevertheless, plaintiff has failed to state a claim for relief.

"Prisoners have a First Amendment right to telephone access, subject to reasonable security limitations."  *Keenan*, 83 F.3d at 1092 (citing *Strandberg v. City of Helena,* 791 F.2d 744, 747 (9th Cir. 1986)); *see also Johnson v. California*, 207 F.3d 650, 656 (9th Cir. 2000) ("Although prisoners have a First Amendment right to telephone access, this right is subject to reasonable limitations arising from the legitimate penological and administrative interests of the prison system.").  This right stems from an inmate's "right to communicate with persons outside prison walls," and "a telephone provides a *means* of exercising this right."  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002).  In *Keenan*, the Ninth Circuit found no constitutional violation where the prisoner failed to specify whether the alleged denial of telephone access was total, partial, or occasional and failed to allege that he was "denied access

for a specific emergency or call to his lawyer on an occasion when he had a specific need." 83

F.3d at 1092.

Here, plaintiff alleges

[M]y step father had been diagnosed with cancer and did not have long to live.
My father was so sick he could not write, he could not travel.  I never got to speak
to him before he died.

TAC 27-28, ECF 150.  However, a declaration that plaintiff attached to his complaint reveals

that his stepfather passed away in March 2014, which is outside the statute of limitations.

Bonnie Farlow Decl. ¶ 3, ECF 152.  As plaintiff has failed to sufficiently allege a valid First

Amendment claim for denial of telephone access, this claim is dismissed.

### 2.    Mail

Prisoners have a protected right to send and receive mail.  *Witherow v. Paff*, 52 F.3d 264,

265 (9th Cir. 1995).  Isolated incidents of mail interference, without any evidence of improper

motive or resulting interference with the right to counsel or access to the courts, do not give rise

to a constitutional violation.  *See Davis v. Goord*, 320 F.3d 346, 351-52 (2d Cir. 2003) (holding

that two instances of mail interference are insufficient).

Here, plaintiff alleges that during the relevant time period, "three letters [he]'d mailed out

of the jail [to his mother] arrived at the destinations unsealed and empty."  TAC 28, ECF 150

(citing Bonnie Farlow Decl. ¶ 10, ECF 152) ("Between 3/2015 to 9[/]2015 I received at least two

more letters and one manila envelope that were never sealed by the jail staff.  Two of these were

also empty, the manila envelope somehow arrived unsealed but with it's contents intact.").

These three incidents of mail tampering do not establish a First Amendment claim for right to

send mail.  Accordingly, this claim is dismissed.

### 3.    Free Exercise

Plaintiff alleges defendants violated his First Amendment right to free exercise of religion by refusing to allow him to attend or receive religious services.  TAC 30, ECF 150.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."  *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted).  "The right to exercise religious practices and beliefs does not terminate at the prison door, but a prisoner's right to free exercise of religion is necessarily limited by the fact of incarceration."  *Jones*, 791 F.3d at 1032 (citations, internal quotation marks, and alterations omitted).  "A prisoner's right to freely exercise his religion . . . is limited by institutional objectives and by the loss of freedom concomitant with incarceration."  *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (citing *O'Lone*, 482 U.S. at 348).

"To merit protection under the free exercise clause of the First Amendment, a religious claim must satisfy two criteria."  *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994), *supplemented,* 65 F.3d 148 (9th Cir. 1995).  "First, the claimant's proffered belief must be sincerely held; the First Amendment does not extend to 'so-called religions which . . . are obviously shams and absurdities and whose members are patently devoid of religious sincerity.'"  *Callahan v. Woods,* 658 F.2d 679, 683 (9th Cir. 1981) (citation omitted).  Second, "the claim must be rooted in religious belief, not in 'purely secular' philosophical concerns."  *Id.* (citation omitted).

A plaintiff also must show "that the government action in question substantially burdens the person's practice of her religion."  *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015)

For a burden to be substantial, it must "place more than an inconvenience on religious exercise; it must have a tendency to coerce individuals into acting contrary to their religious beliefs or exert substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Ohno v. Yasuma*, 723 F.3d 984, 1011 (9th Cir. 2013) (citation, alterations, and internal quotation marks omitted). "'To ensure that courts afford appropriate deference to prison officials,' the Supreme Court has directed that alleged infringements of prisoners' free exercise rights be 'judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights.'" *Jones*, 791 F.3d at 1032 (quoting *O'Lone,* 482 U.S. at 349). The challenged conduct 'is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *O'Lone*, 482 U.S. at 349). "Prisons need only provide inmates with a 'reasonable opportunity' to worship in accord with their conscience." *Johnson v. Moore*, 948 F.2d 517, 520 (9th Cir. 1991) (quoting *Allen v. Toombs*, 827 F.2d 563, 569 (9th Cir. 1987)).

Plaintiff alleges, "I had been a practicing [C]hristian most of [my] adult life. I had been part of my home church, taught Bible school and attended both Bible study and prayer groups on a weekly basis." TAC 29, ECF 160. "Courts typically give credence to assertions of sincerely held religious beliefs in absence of any challenge to their sincerity or religious motives, and so long as they are not 'so bizarre, so clearly nonreligious in motivation, as not to be entitled to protection under the Free Exercise Clause.'" *Ohno*, 723 F.3d at 1011 (quoting *Thomas v. Review Bd. of Ind. Emp't Sec. Div.*, 450 U.S. 707, 715-16 (1981)). Thus, plaintiff has sufficiently alleged a sincerely-held religious belief.

Plaintiff alleges that he was prevented from attending religious services for 22 months while he was in solitary confinement. TAC 30, ECF 150. He also alleges:

> When I was again placed in solitary confinement in isolation cell #1 on 3/7/2015,
> I . . . request[ed] to attend the religious services. . . . I requested of the jails
> chaplain, that the approved visiting pastors that ran the religious services, be
> allowed to come to plaintiffs solitary confinement cell door to perform the
> monthly communion and for prayer, the jails chaplain was of a different faith
> religion and seemed reluctant to make such a request, so plaintiff was made to
> suffer in solitude and at times felt that his God had even abandoned him.  Plaintiff
> was never allowed any contact with any other believers at any time[.]

TAC 30, ECF 150.

Any claim pertaining to actions that occurred before March 24, 2015, is barred by the statute of limitations.  However, plaintiff has alleged a claim for denial of free exercise of religion for the period between March 24, 2015, and his release on September 28, 2015, a period of approximately six months.  Such a prolonged and repeated denial of religious services may constitute a "substantial burden" for purposes of establishing a free exercise claim.  *Compare Cejas v. Brown*, No. 18CV00543WQHJLB, 2020 WL 5819750, at *15 (S.D. Cal. Sept. 30, 2020) (declining to grant summary judgment where "Buddhist services were cancelled for 12 out of 17 weeks in the first half of 2017" and "for 19 out of 25 weeks in the first half of 2018"), *with Brown v. Washington*, 752 F. App'x 402, 405 (9th Cir. 2018) (holding that "a one-time set of circumstances amounting to no more than an unintentional interference" with the plaintiff's ability to exercise his religious beliefs was an "isolated incident" and "not enough to constitute a substantial burden of plaintiff's religious beliefs").  Therefore, defendants' motion to dismiss this claim is denied.

### 4.    Retaliation

Plaintiff alleges that because he threatened to file, and did file, a Prison Rape Elimination Act ("PREA") complaint against defendant Higgins, defendants retaliated against him by keeping him in solitary confinement for the remaining time he was incarcerated at the Jackson County Jail.  TAC 32, ECF 150.

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities." *Jones*, 791 F.3d at 1035. "Retaliation against prisoners for their exercise of this right is itself a constitutional violation, and prohibited as a matter of 'clearly established law.'" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted); *see also Shepard v. Quillen*, 840 F.3d 686, 688 (9th Cir. 2016) (recognizing that "a corrections officer may not retaliate against a prisoner for exercising his First Amendment right to report staff misconduct").

There are five basic elements for a First Amendment retaliation claim in the prison context:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Brodheim*, 584 F.3d at 1269 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005)).

Defendants do not dispute that plaintiff has alleged their actions were adverse or that the conduct for which he alleges retaliation was protected by the First Amendment. *See* Mot. Dismiss 36-38, ECF 160. Instead, defendants argue plaintiff has failed to state a claim because he "admitted that he was given at least one opportunity to make phone calls regarding a PREA complaint as soon as the day after being placed in solitary confinement[,]" and "[he] further concedes that he was able to send a letter regarding the PREA complaint to Sheriff Falls and Plaintiff's attorney." Mot. Dismiss 33, ECF 160 (citing Monical Decl., attachs. H, I, J, ECF 160). Put differently, defendants contend plaintiff has not alleged that being in isolation "chilled" his First Amendment rights because plaintiff in fact pursued his grievance.

However, "an objective standard governs the chilling inquiry." *Brodheim,* 584 F.3d at 1271. Thus, "a plaintiff does not have to show that his speech was actually inhibited or

suppressed, but rather that the adverse action at issue would chill *or* silence a person of ordinary firmness from future First Amendment activities." *Id.* (citation and internal quotation marks omitted) (alteration in original). "To hold otherwise would be unjust as it would allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity." *Id.* (citation and internal quotation marks omitted)

Plaintiff alleges that he was placed in solitary confinement during the remainder of his stay in the Jackson County Jail in retaliation for filing a PREA complaint. He has sufficiently an adverse action that would chill or silence a person of ordinary firmness from exercising future First Amendment rights. *See Sawyer v. MacDonald*, 768 F. App'x 669, 672 (9th Cir. 2019) (holding district court erred in granting summary judgment on retaliation claim where he claimed prison officials threatened to designate him as a gang member and transfer him to solitary confinement). Therefore, the motion to dismiss is denied as to this claim.

### F.    Due Process (Claim Four)

Plaintiff alleges he was denied due process in connection with his placement in solitary confinement between March 18, 2015, to September 28, 2015. TAC 33, ECF 150.

"Prisoners are entitled to certain due process protections when subject to disciplinary sanction." *Brown v. Oregon Dep't of Corrections*, 751 F.3d 983, 987 (9th Cir. 2014) (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-71 (1974)). However, "these procedural protections adhere only where the deprivation implicates a protected liberty interest—that is, where the conditions of confinement impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id.* (quoting *Sandin*, 515 U.S. at 484). "Typically, administrative segregation in and of itself does not implicate a protected liberty interest."

*Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).  In confining an inmate to a period of administrative segregation, "prison officials provide adequate due process by holding an informal, non-adversarial evidentiary hearing within a reasonable time after administrative segregation begins, with periodic reviews thereafter to verify that continuing reasons support the segregation decision."  *Cepero v. High Desert State Prison*, No. 3:12–cv–00263–MMD–VPC, 2015 WL 1308690, at *14 (D. Nev. Mar. 24, 2015) (citing *Hewitt v. Helms*, 459 U.S. 460, 477 and n.9 (1983), *abrogated in part on other grounds by Sandin*, 515 U.S. at 472).

Plaintiff claims that on March 17, 2015, Higgins wrote him up for a disciplinary violation in retaliation for threatening to report him for a PREA violation "when [Higgins] had made jokes about shoving a mop handle up [his] ass to check for escape devices while [he] was bent over naked in front of [Higgins]." TAC 33, ECF 150.  Plaintiff claims that as a result of Higgins' disciplinary report he was only supposed to serve a three-day sanction, but instead was placed in "isolation cell # 1" for six months and "was not given a hearing or as to why I was still being kept in isolation beyond my 3 days of sanctions."  *Id.*  Further, plaintiff alleges "[d]efendants Pendland, Aldrich and Beane set up a system of weekly, meaningless, rubber stamped reviews." *Id.* at 26.  Because plaintiff alleges that he was denied a hearing and that any reviews were perfunctory, he has sufficiently alleged denial of his procedural due process rights; however, plaintiff's claim is limited to actions that defendants took between March 25, 2015, and September 28, 2015.

## III.    Vexatious Litigant

Defendants also move for the court to "treat Plaintiff as a vexatious litigant with regard to any future amended complaint filed by Plaintiff in this case."  Mot. Dismiss 34-35, ECF 160.

"Flagrant abuse of the judicial process cannot be tolerated because it enables one person to preempt the use of judicial time that properly could be used to consider the meritorious claims of other litigants." *De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990). "The record supporting such an order 'needs to show, in some manner, that the litigant's activities were numerous or abusive.'" *Harris v. Mangum*, 863 F.3d 1133, 1143 (9th Cir. 2017) (quoting *De Long*, 912 F.2d at 1147). "[S]uch pre-filing review orders should rarely be filed." *De Long*, 912 F.2d at 1147.

Defendants argue, "Plaintiff is emerging as a vexatious litigant, as evidenced by his attempts to circumvent the *Heck* doctrine, his disregard for prior court rulings, and his conscious choice to frivolously alter facts in his own duplicative lawsuits." Mot. Dismiss 34-35, ECF 160. However, at this point, plaintiff's filings are not so "numerous or abusive" or "inordinate" to warrant a vexatious litigant order. *De Long*, 912 F.2d at 1147-48 (examples of "numerous or abusive" filings include plaintiffs who have filed 35 related complaints, more than 50 frivolous cases, or more than 600 complaints). Nor does plaintiff's litigation activity reflect a "pattern of harassment." *Id.* at 1140. Accordingly, defendants' motion seeking to have plaintiff declared a vexatious litigant is denied.

## IV.    ACE LLC

Plaintiff has added ACE LLC as a named defendant and alleges:

> Was the company working for Jackson county under contract to provide maintenance to the counties facilities at the Jackson County Jail. It is sued in its individual capacity for violating both State and Federal laws through it's contracting and maintenance of the installation of legally inadequate lighting in the jails general population, segregation and isolation cells. This defendant was under the color of both State and Federal laws at all times relevant to this action.

TAC 5, ECF 150. Plaintiff also alleges that ACE LLC was the company that changed the light bulbs in his cell. *Id.* 21.

In this court's February 5, 2020 Opinion and Order, the court allowed plaintiff to amend the SAC to remove time-barred claims and claims barred by *Heck*. *See* Opinion and Order 33, ECF 141. It did not give plaintiff carte blanche permission to amend his complaint to add new parties or new claims. Accordingly, the court strikes the allegations against ACE LLC, without prejudice to file a motion to amend to add ACE LLC as a defendant. Any motion to amend the complaint to add ACE LLC as a defendant shall be filed within 30 days of the date of this order.

## ORDER

Defendants' Motion to Dismiss [160] is GRANTED IN PART and DENIED IN PART as follows:

1) Defendants' Rule 41(b) motion is denied.

2) Defendants' motion to dismiss claims against former Sheriff Winters is granted. The claims against Sheriff Winters are dismissed with prejudice.

3) Access to Courts Claims: As to plaintiff's Coos County conviction, his claim regarding his post-conviction petition is not time-barred, but his claims related to his direct appeal and federal habeas petition are time-barred and dismissed with prejudice. Regarding plaintiff's Jackson County conviction, his claims regarding a post-conviction petition and federal habeas petition are not time-barred, but his claim as to his direct appeal is barred by the statute of limitations and dismissed with prejudice. Plaintiff's claim that he was denied access to courts for purposes of filing a claim regarding his conditions of confinement is time-barred and dismissed with prejudice.

4) Conditions of Confinement Claims: Defendants' motion to dismiss plaintiff's claims regarding outdoor exercise, inadequate lighting, strip searches, and noise is denied. Plaintiff's claim regarding inadequate showers is dismissed for failure to state a claim for relief. Plaintiff's

claim regarding solitary confinement is dismissed to the extent he asserts a claim under the Eighth Amendment, but not as to any claim made under the Fourteenth Amendment.

5) <u>First Amendment Claims</u>:  Defendant's motion to dismiss is granted as to plaintiff's claim regarding telephone access and mail for failure to state a claim for relief.  The motion is denied as to plaintiff's claim regarding free exercise of religion and retaliation.

6) <u>Due Process Claim</u>:  Defendants' motion to dismiss plaintiff's due process claim is denied.

7)  To the extent any of plaintiff's claims survive the motion to dismiss, they are limited to the period between March 24, 2015, and September 28, 2015.

8)  Defendants' motion to designate plaintiff a vexatious litigant is denied.

9)  Defendants' motion for more definite statement is denied.

10)  Plaintiff's addition of a new defendant, ACE LLC, is stricken with leave to file a motion to file an amended complaint to add ACE LLC as a defendant within 30 days of the date of this order.

IT IS SO ORDERED.

DATED March 23, 2021.


　　　　　　　　　　　　　　　　　　　　/s/ Youlee Yim You
　　　　　　　　　　　　　　　　　　　　Youlee Yim You
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge